[Civ. No. 22739. Second Dist., Div. Three. Sept. 4, 1958.]

LOWRY B. McCASLIN, Respondent, v. CITY OF MONTEREY PARK et al., Appellants.

LeSage & Bowman and Thomas W. LeSage for Appellants.

Newlin, Tackabury & Johnston, George W. Tackabury, Frank R. Johnston and Hudson B. Cox for Respondent.

VALLÉE, J.—Appeal by defendants from a judgment for plaintiff permanently enjoining defendants from enforcing the provisions of two zoning ordinances expressly designed to compel the discontinuance of the use of plaintiff's property as a decomposed granite quarry. The question is the validity, as applied to plaintiff's operations, of provisions of zoning ordinances of the city of Monterey Park.

Plaintiff, since 1937, has been the owner of a large tract

of land in the city of Monterey Park, called the city, of which a portion comprising about 70 acres is now and since 1944 has been used as a site for mining decomposed granite. The property is located on the southeast boundary of the city limits. Substantially throughout its entire area the property is comprised of decomposed granite. The structures on the land used in connection with the operation consist of a roofed screening plant and several small buildings, all of which were on the land prior to 1950.

Contiguous to the northeasterly portion of plaintiff's property is a rifle range used by the city's police. On the east boundary line and just over the city boundary is a 10-acre nursery. Traversing the easterly portion in the city are high tension lead-in wires and poles of the Edison Company leading to the company's substation located immediately adjacent to plaintiff's property to the south, but separated by a street known as Potrero Grande. The Edison Company substation occupies about 80 acres. Immediately to the south of the Edison Company property is a dump and salvage operation, established in 1949; and in this same area to the southwest is a gravel pit and dump, which operation began in 1953. West of plaintiff's property is a residential area of single family dwellings which developed during the years 1947 to 1954. Contiguous to the property there is a ready-mix concrete plant. To the southeast there is a 145-acre cemetery, established about 1950.

The property was purchased by plaintiff in 1937. From that time until early in 1944 it was used exclusively for grazing purposes. The first zoning ordinance passed by the city was ordinance 349, approved March 12, 1938, which zoned plaintiff's property "R-5" (residential-agricultural). Early in 1944 plaintiff leased the property to Dwain O'Neal for the purpose of mining decomposed granite under a contract he had with the Maywood Air Services Supply Depot to furnish them with base material. The Board of Adjustments of the city granted O'Neal a variance on July 17, 1944 permitting the processing and removal of decomposed granite from the property. This was followed early in 1945 by another lease of the property to Bryce for one year for mining decomposed granite under a similar variance granted the lessee by the city's Board of Adjustments on April 10, 1945.

On June 25, 1945, the city enacted ordinance 448 repealing the 1938 ordinance. Plaintiff's property was again zoned "R-5"; however, under section 11(a) it was provided that

"Any existing use of any building, structure or premises at the time this ordinance or any amendment thereto becomes effective may be continued, providing such existing use is not in violation of any other ordinance or law."

At the expiration of the year's lease Bryce continued operating the quarry on a month-to-month basis. Plaintiff returned from the service about September 1945 and continued the same type operation under the name "McCaslin Materials Company."

Some time in 1947 plaintiff was approached by the then mayor of the city, three councilmen, and an official of the Edison Company with respect to the sale of a portion of his land to the Edison Company for the erection of an electrical substation. Plaintiff advised them that as his property was zoned residential-agricultural, the locating of a substation would require rezoning and he could agree to sell some of the land to the Edison Company only if the property were zoned industrial. It was thought that the Edison Company's improvements would be advantageous to the city in realization of about $15,000 a year in taxes therefrom. At the mayor's suggestion plaintiff retained an industrial real estate salesman who worked with the city attorney in drafting an industrial ordinance.

On March 24, 1947, the city council enacted ordinance 477 amending the 1945 ordinance (448) creating, among other things, an industrial district zone which included all but a 200-foot strip on the westerly side of plaintiff's property. Plaintiff then sold about six acres to the Edison Company, in addition to two and a fraction acres previously granted as rights of way; and the electrical substation was built.

On December 8, 1947, an urgency ordinance (494) was adopted limiting the operation of gravel pits and quarries to daylight hours and declaring the operation of a gravel pit or quarry then operating within the city on Sunday and late and unusual hours of the night constituted a nuisance. Substantially the same type ordinance (524) was adopted November 8, 1948.

Effective January 19, 1950 the city council adopted a city-wide zoning ordinance (556), as a result of which plaintiff's property was rezoned from industrial to residential-agricultural. This ordinance eliminated all reference to industrial zones within the city and substituted therefor certain limited "M-1" zones for light manufacturing. Section 9220 provided for continuance of nonconforming buildings and for

continuance of their use for a period of their normal life, but in no event less than 20 years from their original construction. Section 9221 provided for the continuance for not more than two years of nonconforming uses of land where no structure thereon is employed therefor,[1] and that no nonconforming use of land should be expanded or extended on the same property. Section 9226[2] declared the production and development of natural resources to be a special use permitted in any zone on condition that a permit for the location and operation thereof be obtained under the procedure set forth in the chapter relating to variances. Ordinance 556 is one of the two ordinances the validity of which is attacked by plaintiff as applied to him.

Plaintiff was not aware of this rezoning of his property to residential-agricultural until some time in 1953. On February 11, 1954, he filed an application for a special use permit and on March 4, 1954, the application was heard and denied by the city planning commission. On April 12, 1954, the city council denied plaintiff's application for the permit and the action of the planning commission was affirmed.

Despite these actions of the planning commission and the city council in denying the special use permit, during the entire period of plaintiff's mining operations he was issued each year a business license by the city for the operation of the gravel pit, including the calendar year 1956.

On January 9, 1956, sections 9221 and 9226 of ordinance 556 were amended by ordinance 727. Ordinance 727 is entitled: "An Ordinance of the City Council of the City of Monterey Park Amending Certain Sections of the Monterey Park Municipal Code Relating to the Excavation and Processing of Decomposed Granite, Sand, Rock and Gravel." It expressly prohibits the expansion or extension of nonconforming use of land to the same or adjoining property, limits

---

[1] There was no provision relating to the use of land where structures thereon were employed therefor, as in the present case.

[2] Section 9226 in pertinent part reads: "Location and operation of all of the following, and all matters directly related thereto, are declared to be special uses permitted in any Zone provided and on condition that a permit for the location and operation thereof shall be granted and obtained under the procedure set forth in this Chapter relating to variances. This declaration is based on the fact that all of the uses here enumerated possess characteristics of such unique and special forms as to make impractical their being included automatically in any classes of use as set forth in the various zones herein defined. . . .

"6. Natural resources, production and development of, together with necessary buildings, apparatus or appurtenances incident thereto."

the mining of decomposed granite under special use permit status to M-1 and M-2 zones only, provides for discontinuance of existing nonconforming uses within 60 days after the date such use becomes nonconforming, and declares that such mining operations in any zone other than M-1 and M-2 zones shall constitute a public nuisance.[3]

The effect of the amending ordinance was to declare plaintiff's further operation of the quarry a public nuisance 60 days after its passage.[4]

Plaintiff filed this action praying that ordinances 556 and 727 be declared unconstitutional and void as applied to him, and that their enforcement be enjoined. The city filed a cross-

---

[3]Pertinent parts of ordinance 727 are:

"SECTION *9221. Non-conforming Uses.* (a) The non-conforming use of land where no structure thereon is employed therefor, existing at the time this Chapter becomes effective may be continued for a period of not more than two years therefrom, provided:

"1. That no non-conforming use of land shall in any way be expanded or extended either on the same or adjoining property.

"2. That if the non-conforming use of land existing at the time this Chapter became effective is thereafter discontinued or changed, any future use of such land shall be in conformity with the provisions of this Chapter.

. . . . . . . . . . . .

"(c) Notwithstanding any other provision of this Section or of Section 9220, the non-conforming use of land in any zone other than an M-1 Zone or an M-2 Zone for the excavation, extracting, production or processing of decomposed granite, sand, rock or gravel shall be discontinued and completely terminated within sixty days after the date such use becomes non-conforming; and the use of land for the excavation, extracting, production or processing of decomposed granite, sand, rock or gravel in any zone other than an M-1 Zone or an M-2 Zone is hereby found and declared to be a public nuisance

. . . . . . . . . . . .

"SECTION *9226. Special Uses. Permit.* The location and operation of all of the following, and all matters directly related thereto, are declared to be special uses permitted in any zone (except as hereinafter expressly set forth) provided and on condition that a permit for the location and operation thereof shall be granted and obtained under the procedure set forth in this Chapter relating to variances. This declaration is based on the fact that all of the uses here enumerated possess characteristics of such unique and special forms as to make impractical their being included automatically in any classes of use as set forth in the various zones herein defined.

. . . . . . . . . . . .

"6. Natural resources, exploration, production and development of, together with necessary buildings, apparatus or appurtenances incident thereto; *provided, however, that the excavation, extracting, production, or processing of decomposed granite, sand, rock or gravel shall not be permitted in any zone other than in an M-1 Zone or M-2 Zone, and no such permit shall be issued or granted therefor in any zone other than an M-1 Zone or an M-2 Zone."* (Italics added.)

[4]It appears to be conceded that ordinance 727 was expressly aimed at plaintiff's quarrying operations.

complaint praying that the ordinances be declared constitutional; that plaintiff be enjoined from using the land for mining decomposed granite; and that such use be declared a nuisance.

The trial court found: ordinance 727 "was directed specifically at plaintiff's operations and business and at no other business"; use of the property by plaintiff for mining decomposed granite is a permitted use under ordinance 477 which zoned the property "industrial" in 1947; and such use does not constitute a public nuisance. The court concluded that ordinances 556 and 727 are unconstitutional as applied to plaintiff in that they prohibit the continuance of the mining operations and business which existed at the time they were passed, thereby taking from plaintiff a valuable property right without the payment of compensation. Judgment was in favor of plaintiff, and defendants were permanently enjoined from enforcing or attempting to enforce the ordinances as to him. Defendants appeal.

Defendants contend that ordinance 556 and amendatory ordinance 727, requiring the mandatory discontinuance of the nonconforming use after a period of 60 days, constitute a reasonable exercise of the police power under the facts and that such legislation is a valid exercise of such power as applied to plaintiff.

Plaintiff contends the ordinances may not be constitutionally applied to him so as to prohibit the continuance of his lawful business which was in existence at the time the ordinances were enacted.

The use of plaintiff's property for quarrying decomposed granite existed at the time ordinance 556 was enacted in 1950 and has continued at all times since. ■ A nonconforming use is a lawful use existing on the effective date of the zoning restriction and continuing since that time in nonconformance to the ordinance. (*City of Los Angeles* v. *Gage,* 127 Cal.App. 2d 442, 453 [274 P.2d 34].) ■ The general rule against the interpretation of a statute or ordinance to give it a retrospective operation, especially where vested rights are affected, is applicable to the construction of zoning laws. ■ "The rights of the users of property as those rights existed under prevailing zoning conditions are well recognized and have always been protected." (*Livingston Rock etc. Co.* v. *County of Los Angeles,* 43 Cal.2d 121, 127 [272 P.2d 4]; *City of La Mesa* v. *Tweed & Gambrell Planing Mill,* 146 Cal.App.2d 762, 768-771 [304 P.2d 803].) ■ A zoning

ordinance which requires the discontinuance forthwith of a nonconforming use existing when the ordinance was adopted is a deprivation of property without due process of law unless the use is a public nuisance.[5]

In *Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332 [175 P.2d 542], Mr. Chief Justice Gibson, writing for the court, stated (p. 340):

''An examination of the California decisions discloses that the cases in which zoning ordinances have been held invalid and unreasonable as applied to particular property fall roughly into four categories: 1. Where the zoning ordinance attempts to exclude and prohibit existing and established uses or businesses that are not nuisances. [Citations.] 2. Where the restrictions create a monopoly. [Citations.] 3. Where the use of adjacent property renders the land entirely unsuited to or unusable for the only purpose permitted by the ordinance. [Citation.] 4. Where a small parcel is restricted and given less rights than the surrounding property, as where a lot in the center of a business or commercial district is limited to use for residential purposes, thereby creating an 'island' in the middle of a larger area devoted to other uses.''

It is held that when a sand and gravel pit has been in operation prior to the passage of a zoning ordinance and continuously thereafter, a nonconforming use existed and operation of the pit cannot be enjoined. (*North Hempstead* v. *De Pasquale Bros., Inc.*, 280 App.Div. 991 [116 N.Y.S.2d 564]; *Somers* v. *Camarco*, 126 N.Y.S.2d 154, 156; *Marple Township* v. *Tarquinio*, 81 Pa. D. & C. 210, 38 Del. Co. 362.)

Plaintiff had a vested property right in the use of his property as a quarry of decomposed granite of which he could not be constitutionally deprived without due process of law. The legislation in question does not attempt to regulate plaintiff's operations but prohibits the continuance of the prior nonconforming use altogether. Such legislation can be sus-

[5]*Dobbins* v. *Los Angeles,* 195 U.S. 223 [25 S.Ct. 18, 49 L.Ed. 169, 176]; *Jones* v. *City of Los Angeles,* 211 Cal. 304, 310 [295 P. 14]; *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 340 [175 P.2d 542]; *Village of Mill Neck* v. *Nolan,* 233 App. Div. 248 [251 N.Y.S. 533]; *Adams* v. *Kalamazoo Ice & Fuel Co.,* 245 Mich. 261 [222 N.W. 86, 87]. *Cf. People* v. *Hawley,* 207 Cal. 395, 412 [279 P. 136]; *In re Smith,* 143 Cal. 368, 371 [77 P. 180]; *In re Kelso,* 147 Cal. 609, 612-613 [82 P. 241, 109 Am.St.Rep. 178, 2 L.R.A.N.S. 796]; *Byers* v. *Colonial Irrigation Co.,* 134 Cal. 553, 555 [66 P. 732]; *Vowinckel* v. *N. Clark & Sons,* 216 Cal. 156, 162 [13 P.2d 733]; *Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 368 [203 P.2d 37]; *Morton* v. *Superior Court,* 124 Cal.App.2d 577 [269 P.2d 81, 47 A.L.R.2d 478].

tained under the police power only if it is reasonably related to the object sought to be accomplished and is not arbitrary and discriminatory in its application to plaintiff. (35 Cal. Jur.2d 70, § 247.)

██ Applying the above principles to the present case, the trial court correctly found the legislation in question constitutes an unwarranted and arbitrary interference with plaintiff's right to carry on a lawful business and that "Ordinance No. 727 was adopted for the purpose of discriminating against plaintiff and compelling the discontinuance of plaintiff's business; . . . and does in fact discriminate against plaintiff by requiring the discontinuance of his business and operations while not requiring discontinuance of any other business based upon the extraction of natural resources;" and "purports to take from plaintiff a valuable property right inherent in the ownership of such property." As held by the trial court, ordinances 556 and 727 are invalid as applied to plaintiff.

A further contention of defendants is that it has been the continued policy of the city to classify plaintiff's property as residential-agricultural from 1938 to the present time, except for the 21 months during the time ordinance 477 classified the major part of it as industrial; and since plaintiff has never applied for rezoning of the property or appealed from the denial of his application for a special use permit by the planning commission and city council, his continued use of the property for mining decomposed granite has been illegal and a nuisance.

██ There is substantial evidence in the record to support the trial court's findings to the effect that (1) plaintiff had established a lawful nonconforming use of his land prior to enactment of ordinances 556 and 727 and (2) the conduct of the operation does not constitute a nuisance. The record shows that the nonconforming use was established as early as 1944. The zoning ordinance of June 1945 (448) provided for the continuance of such nonconforming use. There was no abandonment or interruption in the mining operations from the time the second lessee commenced operations early in 1945 until the present. Thus, when most of the land was zoned from residential-agricultural to industrial for a period of 21 months in 1947 by ordinance 477 and then rezoned to residential-agricultural in 1950 under the comprehensive zoning ordinance which required a special use permit for production and development of natural resources on one's land in any

zone, plaintiff's nonconforming use was unaffected by denial of a permit to continue operating under that ordinance. Having established the nonconforming use, he was entitled to continue his operations as a matter of right. He was not required to obtain a special use permit.

 Defendants contend the trial court erred in failing to make a finding as to the scope and limitation of plaintiff's nonconforming use. They complain that the court ignored the provision of section 9221 of ordinance 556, "[T]hat no nonconforming use of land shall in any way be expanded or extended either on the same or adjoining property." Defendants assert that by such provision plaintiff was limited to excavating that portion of the property already excavated. We do not agree. The very nature and use of an extractive business contemplates the continuance of such use of the entire parcel of land as a whole, without limitation or restriction to the immediate area excavated at the time the ordinance was passed. A mineral extractive operation is susceptible of use and has value only in the place where the resources are found, and once the minerals are extracted it cannot again be used for that purpose. "Quarry property is generally a one-use property. The rock must be quarried at the site where it exists, or not at all. An absolute prohibition, therefore, practically amounts to a taking of the property since it denies the owner the right to engage in the only business for which the land is fitted." (*Morton* v. *Superior Court*, 124 Cal.App. 2d 577, 582 [269 P.2d 81, 47 A.L.R.2d 478] ; *Lockard* v. *City of Los Angeles*, 33 Cal.2d 453, 467 [202 P.2d 38, 7 A.L.R.2d 990] ; *Trans-Oceanic Oil Corp.* v. *Santa Barbara*, 85 Cal.App.2d 776, 789 [194 P.2d 148] ; *Wheeler* v. *Gregg*, 90 Cal.App.2d 348, 364-365 [203 P.2d 37] ; *Borough of Cheswick* v. *Bechman*, 352 Pa. 79 [42 A.2d 60] ; *Lamb* v. *A. D. McKee, Inc.*, 10 N.J. Misc. 649 [160 A. 563] ; *Village of Terrace Park* v. *Errett*, 6 Cir., 12 F.2d 240, 243.) An entire tract is generally regarded as within the exemption of an existing nonconforming use, although the entire tract is not so used at the time of the passage or effective date of the zoning law. (58 Am.Jur. 1023, § 151.) While it is true that the area already excavated up to the time of trial contained 150,000 to 200,000 tons yet to be mined, to hold that plaintiff's operations must be confined to extracting what remains in that area only would mean processing that portion of the land below the street level. This would result in the particular area taking on the aspect of an unsightly pit which could serve no useful

future purpose other than perhaps a dump. The property is hilly. Plaintiff testified that his intention is to remove the material so as to bring the grade down in conformity with existing street levels, which is consonant with the highest and best use of the land for subdivision purposes. The evidence shows plaintiff has conducted his operations in such a way as to create a future beneficial use of the land for this purpose. Defendants' own witness, a licensed real estate broker, testified: "The grading which has already taken place, has, I believe helped it, in that the grading, in my opinion, has not been a—and to Mr. McCaslin's credit—has not been haphazard operation; instead of a pit kind of operation he have [sic] had an operation which has covered some of that area and it in effect leveled it, and I think that helps for subdivision purposes." Of course, plaintiff's nonconforming use of the property in question cannot be expanded or extended to a separate parcel, called Parcel 2 in the record, or to the 200-foot buffer area along the westerly end of the property in question adjacent to the residential area. To this extent the ordinance prohibiting the expansion or extension of nonconforming use to "the same or adjoining property" is applicable to plaintiff.

The ordinances in question cannot find support in the legislative power to prohibit a nuisance. It is established law in this state that the business of excavating rock and gravel is a lawful and useful operation. (*Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 369 [203 P.2d 37].) The operation of a quarry is not a nuisance *per se.* (*Morton* v. *Superior Court,* 124 Cal.App.2d 577, 581 [269 P.2d 81, 47 A.L.R.2d 478].)
 The trial judge, in addition to viewing the premises and plaintiff's operation thereon, heard extensive evidence as to whether plaintiff's quarrying operations constituted a nuisance in fact, an issue raised by defendants' pleadings. He found on substantial evidence that plaintiff's operations "do not create dust, dirt, smoke, noise or vibrations to a degree sufficient to impair the public health, safety, morals or general welfare or to a degree sufficient to constitute a public nuisance"; plaintiff's use of his property and the operations "have never impaired and do not now impair the public health, safety, morals or general welfare"; and the operations "have never constituted and do not now constitute a public nuisance." Defendants say these findings are "contrary to the preponderance of the evidence." While much of the testimony was conflicting, the evidence most favorable to respond-

ent must be accepted. The evidence is sufficient to support the finding that the operation of the quarry was not a nuisance, and the trial court was justified in adhering to the rule that in a proper case it will not enjoin the conduct of an entire business operation where it is not a nuisance *per se*. We are bound by the oft-repeated rule that findings supported by substantial evidence will not be disturbed on appeal.

The court excluded testimony of two members of the city council proffered by defendants with respect to their purposes and motives in voting for passage of ordinances 556 and 727. Defendants assert error. There was no error. The purpose or motive of the city officials in passing an ordinance is irrelevant to any inquiry concerning the reasonableness of the ordinance. (*Sunny Slope Water Co.* v. *City of Pasadena*, 1 Cal.2d 87, 99 [33 P.2d 672].)

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied September 30, 1958, and appellants' petition for a hearing by the Supreme Court was denied October 28, 1958. Gibson, C. J., and Traynor, J., were of the opinion that the petition should be granted.