[Civ. No. 15983. First Dist., Div. One. Apr. 16, 1954.]

HAMILTON MORTON et al., Petitioners, v. SUPERIOR COURT OF SAN MATEO COUNTY et al., Respondents.

[Civ. No. 16125. First Dist., Div. One. Apr. 16, 1954.]

THE PEOPLE et al., Respondents, v. HAMILTON MORTON et al., Appellants.

Alfred J. Harwood for Petitioners and Appellants.

Keith C. Sorenson for Respondents.

PETERS, P. J.—There are presently two proceedings pending before this court growing out of the same controversy. One Civ. No. 15983 is a petition for a writ of prohibition aimed at arresting the enforcement of an order granting an injunction pendente lite. One Civ. No. 16125 is an appeal from the order granting the injunction. Prior to the perfecting of the appeal an alternative writ of prohibition and an order temporarily staying the enforcement of the injunction were issued. When the appeal was perfected the two proceedings, by stipulation, were consolidated. The issues presented in the prohibition proceeding involving the validity of the injunction can all be decided on the appeal, so that the prohibition proceeding is now moot.

The amended complaint upon which the request for the preliminary injunction was predicated sets forth three causes of action. The first two are by the county against the Whipple Road Quarry Company and its president, Hamilton Morton. The first prays for an injunction on the theory that the defendants are operating the quarry without a permit as required by ordinance 961 of the county, that such operation without a permit constitutes a nuisance, and therefore should be enjoined. The second cause of action, also by the county, alleges that the quarry is being operated in a manner that violates certain regulatory provisions of the ordinance, that such operation constitutes a nuisance, and should be enjoined. The third cause of action is by the state. It sets forth that the quarry is being operated under certain described conditions that make it a public nuisance, which should be enjoined. After the trial, the court issued its order abso-

lutely enjoining the operation of the quarry. This order is predicated on findings contained in the order that the quarry is being operated without a permit in violation of ordinance 961, that the method of operation violates that ordinance in certain described particulars, and that the method of operation creates a public nuisance.*

The record shows the following: The quarry is located in unincorporated territory about one mile from the city limits of Redwood City, and is operated by the Whipple Road Quarry Company, a corporation. It operates on a royalty basis under a lease on lands owned by others. It has been operating at its present site since 1929. The quarry itself, and the area surrounding it are hilly and wooded, being very precipitous in certain parts. A hard-surfaced road known as Edgewood Road (Old Whipple Road) leads past the quarry property. About 900 cars daily, including defendants' trucks, travel on it. A large part of the area surrounding the quarry, particularly towards the west, is entirely uninhabited. Some homes, however, are located in the general area, particularly along or near Edgewood Road, which is easterly from the quarry property. The evidence shows that there are about 55 homes within a half mile of the boundaries of the quarry property, 20 being located on Edgewood Road. No owner of any property immediately adjacent to the quarry property has complained about its operations. Most of the witnesses who testified in this proceeding and complained about the quarry's operations live on or near Edgewood Road. Practically all of the homes in the area have been built since 1929.

There is a rather sharp curve in Edgewood Road as it approaches the quarry property. On this curve a private road, built for the quarry's use, enters Edgewood Road. This quarry road originally had a macadam surface, but in the summer of 1952 Morton put a penetrating oil on it. Then in February of 1953 the road was hard surfaced. It was regraded, rolled with rock, then a road oil was added, and the road rolled again. This was done in an attempt to keep the road free from dust. This quarry road runs uphill from the Edgewood Road intersection, and is quite steep. A surveyor testified that for the first 40 feet the incline is 8 per cent, for

*The record shows that after the preliminary injunction was granted, the trial court sustained a demurrer to the complaint upon which the injunction was predicated. Counsel have informed the court that an amended complaint has since been filed. That pleading is not before this court. So far as the record shows, the trial to determine whether a final injunction should be granted has not been held.

the next 40 feet it is 8.8 per cent, the third 40 feet is 18 per cent, the fourth is 18.6 per cent, while the fifth 40-foot stretch is 18 per cent, and the sixth 40 feet is 16.5 per cent. The road then is practically level from the top of the hill to the quarry operation, a distance of about 90 feet.

The major objections of the householders who testified for the plaintiffs were that the operation of the quarry caused an excessive amount of dust, which carried over to the homes along Edgewood Road, and that the rock crusher, the trucks and the tractors used in the quarry's operation created a great amount of noise that was audible and annoying to some of the householders. There was also substantial evidence that the trucks from and to the quarry created a traffic hazard, particularly where the quarry road enters Edgewood Road. The traffic conditions on Edgewood Road are not due solely to defendants' trucks. Their trucks constitute a small percentage of the total number of vehicles on the road. Several other quarries also use Edgewood Road for their trucks, as do many private vehicles.

The quarry applied for a permit, as required by ordinance 961, but such application was denied by the planning commission and the board of supervisors. A mandamus proceeding is pending in the superior court to test the validity of those denials. An inspector of the county planning commission testified that in several respects the quarry was being operated in a manner that violated certain of the regulations contained in that ordinance. Thus, in at least one place, an excavation had been completed with less than a one-to-one slope, certain precautions against erosion had not been taken, and some portions of the quarry property had not been enclosed by a fence.

There was evidence that the tempo of the operations of the quarry had been increased shortly before the trial, that the quarry sometimes operated on Sunday, and that on some days it started operations early in the morning. There was also testimony by one witness to the effect that on one occasion a truck tire had rolled down the hill from the quarry property, crashed through a fence and into the home of the witness, barely missing a small child playing in the yard. In most respects this evidence was contradicted by the witnesses for the quarry company, some of whom were householders on Edgewood Road. However, there is substantial evidence in the record to support the allegations of the complaint that this quarry was being operated in violation of the

ordinance and in a manner so as to constitute a public and private nuisance as alleged in the complaint. This evidence need not be further reviewed. But it is important to note that there was no evidence of any kind that any one of the conditions of which complaint is made, except the very fact of the operation of the quarry, could not be regulated so as to prevent such conditions from constituting a nuisance. To the contrary, there was much testimony to the effect that the conditions complained about were subject to correction. There was testimony of engineers and experts that a housing could be devised for the crusher, where most of the dust was created, that would successfully prevent the escape of substantially all of the dust from that cause. Frequent sprinkling of the shoulders of the quarry road would obviously curtail dust from that source. The traffic hazard could be controlled by the use of a flagman at the intersection of the quarry and Edgewood roads. Moreover, Morton testified that he was in the course of constructing a different access road to the quarry operations that would be hard-surfaced and not as steep as the present road. Noise regulations of various sorts could have been imposed. Obviously, Sunday or early morning or late evening operations could be regulated. These facts are of considerable importance because the record does not show that, at either the hearing on the permit application, or on the present trial, defendants were given the opportunity to correct their methods of operation so as to minimize or prevent the conditions about which complaint was made. As already pointed out, the preliminary injunction from which this appeal is taken constitutes an absolute prohibition against the operation of the quarry in any fashion. Thus, had the restraining order not issued in the prohibition proceeding, the defendants would have been prevented entirely from operating the quarry, regardless of what corrective measures they might have been required to use to obviate existing conditions.

There can be no doubt but that the injunction, insofar as it is based on the second and third causes of action, is much too broad in that it prohibits the operation of the quarry, and does not give the defendants the alternative of correcting the manner of their operations. The operation of a quarry is, of course, a lawful business. It is not a nuisance *per se*. Of course, if in fact it is being operated so as to constitute a nuisance, the acts constituting the nuisance may and should be enjoined. It is even possible, where the facts justify it, that is, where the evidence

shows that the business cannot be operated at all without creating a nuisance, to prohibit the operation completely. This same result may be reached by a proper and reasonable zoning ordinance. (*In re Angelus,* 65 Cal.App.2d 441 [150 P.2d 908].) But that is not this case. Here the trial court made no finding that the conditions creating the nuisance could not be rectified. The evidence, had such a finding been made, would not support such a finding. As already pointed out, the evidence is all to the contrary.

There is a vast difference between regulating the methods of operation of a lawful business by injunction or ordinance, and in completely prohibiting the carrying on of such business. (*In re Lawrence,* 55 Cal.App.2d 491, 497 [131 P.2d 27].) Quarry property is generally a one-use property. The rock must be quarried at the site where it exists, or not at all. An absolute prohibition, therefore, practically amounts to a taking of the property since it denies the owner the right to engage in the only business for which the land is fitted. While, under the police power, such complete prohibition against operating the property can be decreed, it can only be justified where irreparable injury to others necessarily results and the condition cannot be rectified except by complete prohibition.

An injunction against operating property for the only lawful purpose for which it is fitted is an unusual and heroic remedy. It should only be employed where no other means of protecting the complaining public exists. Whether the attempt to regulate be by ordinance or by injunction the approach must be reasonable.

 The law is well settled to the effect that, when the defendant's business is not a nuisance *per se,* the injunction should be limited in scope so as to not enjoin the defendant's entire business if a less measure of restraint will afford the relief to which the plaintiff is entitled. The rule is stated as follows by Pomeroy in his work on Equitable Remedies, volume 2 (2d ed.), section 534:

" 'Injunctions against carrying on a legitimate and lawful business should go no further than is absolutely necessary to protect the lawful rights of the parties seeking such injunction. When a person is engaged in carrying on such business, he should not be absolutely prohibited from doing so, unless it appears that the carrying on of such business will necessarily produce the injury complained of. If it can be conducted in such a way as not to constitute a nuisance,

then it should be permitted to be continued in that manner.' (*Chamberlain* v. *Douglas*, 48 N.Y.S. 710, 711 (1898) . . . In accordance with the same principle injunctions will not be issued, it is said, against a business which is a nuisance, when the nuisance can be remedied by the use of scientific appliances; instead the court will direct the introduction of such appliances, and whenever necessary to prevent hardship a reasonable amount of time, in which the defendant may conform to the injunction, will be allowed.''

This has long been the rule in California. In the early case of *McMenomy* v. *Baud*, 87 Cal. 134 [26 P. 795], it was claimed that a brass foundry was allegedly endangering the safety and health of plaintiff and offending him by noise, jarring, smoke, smell, and obstructions. The court said (p. 139) : ''Therefore, where the injurious effects complained of may be prevented without abating or enjoining the works or the operations thereof entirely, only the causes of the specific injurious effects proved should be enjoined. If, for example, the cause be the production and escape of smoke and soot in such a way as that they penetrate plaintiff's premises, to his injury, the remedy by injunction should be restricted to this specific injury, and leave the defendant at liberty to operate his works, if he can, and elects to do so, in such a manner as to remove the cause and prevent the injury. [Citing cases.]''

In the recent case of *Anderson* v. *Souza*, 38 Cal.2d 825, at page 840 [243 P.2d 497], the court stated: ''Injunctive process ought never to go beyond the necessities of the case and where a legitimate business is being conducted and in the conduct thereof a nuisance has been created and is being maintained, the relief granted should be directed and confined to the elimination of the nuisance, unless under the peculiar circumstances of the case the business, lawful in itself, cannot be conducted without creating a nuisance and violating the rights of contiguous property owners.''

In *Thompson* v. *Kraft Cheese Co.*, 210 Cal. 171 [291 P. 204], in reversing an injunction on the ground that it was too broad the court stated (p. 180) : ''Where the decree absolutely prohibits any acts, there should be abundant evidence that the continuance of the acts will inevitably result in irreparable injury. In the absence of such strong evidence, the decree should merely enjoin the doing of the particular acts in a manner calculated to injure the plaintiff. [Citing cases.]''
(See also *Fresno* v. *Fresno C. & I. Co.*, 98 Cal. 179, 184

[32 P. 943]; *Byers* v. *Colonial Irr. Co.*, 134 Cal. 553, 555 [66 P. 732]; *People* v. *Selby Smelting & Lead Co.*, 163 Cal. 84 [124 P. 692, 1135, Ann.Cas. 1913E 1267]; *Vowinckel* v. *N. Clark & Sons*, 216 Cal. 156, 162 [13 P.2d 733]; *McPheeters* v. *McMahon*, 131 Cal.App. 418, 425 [21 P.2d 606]; see also cases collected 14 Cal.Jur., p. 275, § 76, in footnote 14 on p. 276.)

This rule of law has been applied in this state to attempts to prohibit absolutely the operation of quarries, and this is so whether such absolute prohibition is attempted by ordinance or by injunction. One of the most recent cases is *Wheeler* v. *Gregg,* 90 Cal.App.2d 348 [203 P.2d 37]. In this case a certain area was zoned as residential, but the ordinance permitted, under certain circumstances, a variance permit. Such a variance permit was granted to Gregg permitting him to operate a quarry subject to certain defined restrictions. In the action by the adjoining property owners to enjoin the quarry as a nuisance, the court, in its decree, included these restrictions and added several of its own. The property owners appealed. In upholding the action of the trial court the appellate court stated (p. 368): ''Where as here, the operations in question could not be characterized as a nuisance *per se,* the court was justified in following a well established rule of law which provides that under such circumstances the decree should not enjoin more than the specific thing which might constitute a nuisance, as appears from the requirements of the particular case . . . It is now established law in this state that the business of excavating rock and gravel by the owner from lands belonging to him is a lawful and useful occupation, and the regulation thereof should go no further than to control those particular features of the operations which might result in substantial injury to adjoining property or to persons residing or owning property in the near vicinity of the land upon which the operations are being conducted. [Citing cases.]''

After reviewing some of the evidence the court stated (p. 369): ''The court was therefore justified in giving heed to the aforesaid rule, that in proper cases it will not enjoin the conduct of a defendant's entire business where such business is not a nuisance *per se* if less measure of restriction will afford plaintiffs the relief to which they may be entitled.''

In *People* v. *Hawley,* 207 Cal. 395 [279 P. 136], it appeared that smoke, dust and noise emanated from defendant's quarry, and that stagnant water there accumulated, to the annoyance

and damage of some of the surrounding property owners. Excavations made by defendant whose quarry lands were in and near the bed of a stream, endangered the surrounding properties by increasing the danger of floods. The trial court, as to a portion of the quarry property, enjoined these practices, ordering defendant to drain off the stagnant waters and to fill the depressions, to substitute an electric for the existing steam shovel to eliminate noise and smoke, and to take certain described steps to protect the area from floods. As to the balance of the quarry property, however, the court found that such regulations would not protect the adjoining property owners, and enjoined all quarry operations in this area. The Supreme Court reversed this portion of the decree on the grounds that absolute prohibition was not justified and that conditions similar to those imposed on the other portion of the quarry lands would protect the adjoining owners. Thus, an absolute prohibition was not permitted.

In *In re Kelso,* 147 Cal. 609 [82 P. 249, 109 Am.St.Rep. 178, 2 L.R.A.N.S. 796], it was held that a zoning ordinance absolutely prohibiting quarrying operations in certain portions of the city was void. The court held that the use of property may be regulated under the police power in order to protect others, but that such regulation must be reasonable and can go no further than is necessary to protect the rights of others. ''We can see no valid objection to the work of removing from one's own land valuable deposits of rock or stone that may not be entirely met by regulations as to the manner in which such work shall be done, and this being so, we are satisfied that an absolute prohibition of such removal under all circumstances cannot be upheld.'' (P. 613.) The court then pointed out that proper regulations might cost so much as to make the quarry operation unprofitable, ''but if this be the effect of proper regulations, the property-owner cannot complain, for he holds his property subject to the proper exercise of the police power of the state.'' (P. 613.) At page 612 the court stated: ''Such a prohibition might be justified, if the removal could not be effected without improperly invading the rights of others, but it cannot be doubted that rock and stone may under some circumstances be so severed from the land and removed as not in the slightest degree to inflict any injury which the law will recognize. So far as such use of one's property may be had without injury to others it is a lawful use which cannot be absolutely

prohibited by the legislative department under the guise of the exercise of the police power.'' (See also *In re Throop,* 169 Cal. 93, 99 [145 P. 1029].)

 Now how do these rules apply to the present case? As to the third cause of action the trial court found that the quarry operation created a public nuisance in that such operation created a traffic hazard, creating excessive noise and dust ''resulting in irreparable injury to the community in the vicinity of said quarry and to the public at large'' and therefore should be enjoined. Obviously, under the rules above stated, so far as this cause of action is concerned, the injunction is too broad and must be reversed. There is no evidence that these conditions cannot be corrected, and there is uncontradicted and substantial evidence that they can. The trial court should have enjoined the objectionable practices and imposed conditions to correct them.

This is equally true of the second cause of action. As to it, the trial court found that the quarry was being operated in violation of ordinance 961 in that unlawful excavation practices were being used, certain areas were not fenced, and excessive dust and noise were created (all being in violation of the ordinance). There can be no doubt that these regulatory provisions constitute a valid exercise of the police power, and that the evidence supports these findings. Thus, defendants are operating in a manner prohibited by law. But the injunction has no relation to the manner of operation. It prohibits absolutely the use of the premises as a quarry. All of these acts which create a nuisance because of the manner of the operations can be corrected or stopped without preventing the quarry from operating. For these reasons the injunction as to the second cause of action should have been limited to prohibiting the acts creating the nuisance and to ordering any reasonable regulations of the manner of use that may be necessary. Thus, neither the second nor the third causes of action, nor the evidence and findings based thereon, supports the absolute injunction.

The first cause of action presents a somewhat different problem. It is the theory of this cause of action that, because defendants have no permit to operate a quarry as required by county ordinance 961,* such permit having been applied for and denied by the planning commission, the continued

---

*This ordinance was passed in October of 1951 and became effective in November of that year.

operation of the quarry without a permit, regardless of how operated, constitutes a nuisance. The trial court so found.

We have no doubt that, insofar as the ordinance requires of existing as well as of new quarries that they apply for and secure a permit to operate, it is a valid exercise of the police power. We also have no doubt that, if defendants had not applied for a permit, or if they had so applied and the permit had been denied and defendants had allowed the determination to become final by not challenging the denial, the continued operation of the quarry would, as declared in the ordinance, constitute a nuisance which could be enjoined. Such would not be a denial of due process. (*City of San Mateo* v. *Hardy,* 64 Cal.App.2d 794, 797 [149 P.2d 307]; *People* v. *Ryan,* 17 Cal.App.2d 1, 3 [61 P.2d 360]; *Donovan* v. *City of Santa Monica,* 88 Cal.App.2d 386, 397 [199 P.2d 51]; *City of Stockton* v. *Frisbie & Latta,* 93 Cal.App. 277, 285 [270 P. 270].) But that is not the present case. Here the defendants have utilized all of their administrative remedies, and are challenging, by mandamus, the validity of the rulings denying them a permit. From the evidence, briefs and pleadings it appears that defendants applied to the planning commission for a permit; that such a permit was denied; that defendants then "appealed" to the board of supervisors as provided in the ordinance; that again the permit was denied; that defendants then petitioned for a writ of mandamus in the superior court to review the validity of these denials, and that such mandamus proceeding is still pending in the superior court. Of course, the commission was empowered to deny the application for the permit because defendants were operating in a manner contrary to several of the regulatory provisions of the ordinance, but, under the facts here involved, such denial cannot be given the effect of an absolute prohibition against conducting the business by the device of using such denial as a basis for an absolute injunction. Certainly it is not and should not be the law that the superior court, under such circumstances, on application by the county, can enjoin this lawful business simply and solely because defendants do not have a permit, while the validity of such failure is being tested, in a case where, as already held, the same superior court was without power to restrain the operation of the quarry because of the very acts which caused the planning commission to deny the permit. If the superior court was without power

to enjoin because of those acts, as we have already held, it was without power to enjoin because of the lack of a permit based on a denial which was predicated on the same acts.

The records, if any, compiled by the planning commission or the board of supervisors, are not in the present record. But certainly it cannot be presumed that the hearing and investigations by the commission, or the "appeal" to the board of supervisors were more complete or exhaustive than the court hearing in the present injunction proceeding. It can reasonably be assumed that the facts that caused the commission and the board to deny the application for a permit, are the same facts that induced the superior court in the present proceeding to issue its injunction.* But as already held, these facts did not warrant the issuance of an injunction absolutely prohibiting defendants from operating. The planning commission is as much bound by the rule restricting the right to prohibit lawful businesses, where regulation is possible, as is a court. If, as already held, the trial court on the facts before it was without power to enjoin absolutely, it would be anomalous, indeed, to hold that an administrative determination which is under direct attack in the courts, should have greater legal effect. To so hold would be to give greater legal efficacy to administrative rulings than is afforded to judicial determinations. That is not the law. The vested right of defendants to engage in a lawful business, subject only to a lawful exercise of the police power, cannot be taken away in such a cavalier manner. To do so would be to deprive defendants of a vested right without due process.

It necessarily follows that as long as the planning commission's determination is under direct legal attack, such inchoate determination denying to defendants the right to engage in a lawful business that they have engaged in since 1929 cannot be used as the sole basis upon which a court may enjoin the operation of that business. So far as the first cause of action is concerned, predicated as it is solely upon the denial of the permit by the planning commission, it is premature. The injunction based thereon must be reversed.

For reasons already mentioned, the prohibition proceeding (1 Civ. No. 15983) is now moot, and for that reason is dismissed. In action 1 Civ. No. 16125, the appeal from the

---

*If the county desired to use the denial of the permit as the basis for the injunction the burden was on it to show, if such were the fact, that such denial was on grounds different from those urged in the injunction proceedings. This the county did not do.

order granting the preliminary injunction, the order granting such injunction is reversed, with instructions to proceed as herein indicated.

Bray, J., and Wood (Fred B.), J., concurred.

Petitions for a rehearing were denied May 14, 1954, and petitioners' and appellants' petitions for a hearing by the Supreme Court were denied June 9, 1954. Schauer, J., was of the opinion that the petitions should be granted.