[Civ. No. 14827. Third Dist. Apr. 3, 1975.]

FALLEN LEAF PROTECTION ASSOCIATION et al.,
Plaintiffs, Cross-complainants and Appellants, v.
THE STATE OF CALIFORNIA et al.,
Defendants, Cross-complainants and Respondents.

818

**COUNSEL**

Norman & Eames and James K. Norman for Plaintiffs, Cross-complainants and Appellants.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, and Joel S. Moskowitz, Deputy Attorney General, for Defendants, Cross-complainants and Respondents.

**OPINION**

REGAN, J.— This is an appeal from a judgment of dismissal of plaintiffs' cross-complaint for inverse condemnation after the trial court sustained the State's demurrer without leave to amend.[1]

Plaintiffs are the owners of private parcels of property surrounding Fallen Leaf Lake, which lies within the South Tahoe Public Utility

---

[1] A threshold question arises as to whether the judgment is appealable since it may violate the one final judgment rule. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 36, pp. 4050-4051.) However, since the constitutionality of the Water Code sections involved could very well be dispositive of a central issue of the lawsuit, this appeal is an exception to the one final judgment rule. (Witkin, *supra,* § 38, p. 4052, § 44, pp. 4057-4058.)

assessment district and the Lake Tahoe watershed. The owners of these properties are disposing of waste through the use of cesspools and septic tanks, and are not placing their waste into a sewer system or holding tanks.

In 1969 the Legislature enacted sections 13950 and 13951 of the Water Code which provide as follows:

"13950. Notwithstanding any other provision of law, upon any district in the Lake Tahoe Basin providing in any area of the district a sewer system and treatment facilities sufficient to handle and treat any resultant waste and transportation facilities sufficient to transport any resultant effluent outside the Lake Tahoe Basin, the further maintenance or use of cesspools or other means of waste disposal in such area is a public nuisance and the district shall require all buildings from which waste is discharged to be connected with the sewer system within a period of not less than 90 days from the completion of such system and facilities."

"13951. Notwithstanding any other provision of law, on or after January 1, 1972, waste from within the Lake Tahoe watershed shall be placed only into a sewer system and treatment facilities sufficient to handle and treat any such waste and transportation facilities sufficient to transport any resultant effluent outside the Lake Tahoe watershed, except that such waste may be placed in a holding tank which is pumped and transported to such treatment and transportation facilities.

"As used in this section 'waste' shall not include solid waste refuse.

"The further maintenance or use of cesspools, septic tanks, or other means of waste disposal in the Lake Tahoe watershed on or after January 1, 1972, by any person, except as permitted pursuant to this section, is a public nuisance. The occupancy of any building from which waste is discharged in violation of this section is a public nuisance, and an action may be brought to enjoin any person from occupying any such building.

"This section shall not be applicable to a particular area of the Lake Tahoe watershed whenever the regional board for the Lahontan region finds that the continued operation of septic tanks, cesspools, or other means of waste disposal in such area will not, individually or collectively, directly or indirectly, affect the quality of the waters of Lake Tahoe and

that the sewering of such area would have a damaging effect upon the environment.

"This section shall not affect the applicability of Section 13950."

Pursuant to these statutes, the South Tahoe Public Utilities District (hereafter "STPUD")[2] sought to construct a sewer collector line around the shores of Fallen Leaf Lake. Plaintiffs objected to these proceedings and the subsequent litigation ensued.

On August 14, 1973, plaintiffs filed a petition and complaint seeking a writ of mandate, a writ of prohibition, declaratory and injunctive relief. Plaintiffs named as defendants the following parties: STPUD, the State of California Water Resources Control Board, the Lahontan Regional Water Control Board, and the County of El Dorado.

Plaintiffs made a broadside attack upon the proposed construction of the sewer line and the assessment of plaintiffs' properties for the cost of such line. In particular, the plaintiffs contended: (1) there is no need for the sewer project and, if implemented, will have an adverse effect on the environment of Fallen Leaf Lake and Lake Tahoe; (2) STPUD did not comply with the provisions of the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.); (3) STPUD did not comply with the federal National Environmental Policy Act of 1969 (42 U.S.C. § 4321 et seq. ["NEPA"]); and (4) STPUD did not comply with the provisions of the Municipal Improvement Act of 1913 (Sts. & Hy. Code, § 6468 et seq.)

The apparent sole claim against the State Water Resources Control Board and the Lahontan Regional Water Quality Control Board (hereafter "State") was that they had brought improper political pressure upon STPUD to construct the sewer line.

The State filed an answer and, in general, denied that STPUD was exposed to any improper political pressure or that plaintiffs will suffer environmental damage by reason of STPUD's actions. They also alleged that plaintiffs should be denied all relief since they had not complied with Water Code sections 13950 and 13951.

The State also filed a cross-complaint seeking to restrain plaintiffs from occupying any buildings on their property in the Fallen Leaf Lake

---

[2] This is the designation both parties give to the district in their briefs.

area unless and until their buildings were connected to a sewer system of the STPUD or a holding tank.

Sometime in the early part of February 1974, the plaintiffs filed a claim with the Board of Control (see Gov. Code, §§ 940.2, 945.4) for the sum of $5,000,000,000, or in the alternative, a sum equal to the fair market value of certain interests in real property, including existing sewage disposal systems owned by plaintiffs. This claim was based on the State's cross-complaint.

The claim was denied by the board and "CROSS-COMPLAINT IN INVERSE CONDEMNATION" followed. This claim was also based upon the filing of the State's cross-complaint. Although inartfully worded, the plaintiffs' cross-complaint also attempts to set forth acts constituting slander of title, abuse of process and trespass. In particular, plaintiffs' cross-complaint challenges the constitutionality of sections 13950 and 13951 of the Water Code.

The State filed a general demurrer to the plaintiffs' cross-complaint and the trial court sustained the demurrer, stating:

"The demurrer of the defendant STATE OF CALIFORNIA to the cross-complaint is sustained without leave to amend on the grounds that no cause of action has been stated for the reason that direction to comply with Section 13951 of the Water Code is a valid exercise of the police power of the State of California."[3]

Plaintiffs contend that Water Code section 13951 is unconstitutional on its face.[4] This section provides, in essence, that the use of cesspools or

---

[3] In their opening brief, plaintiffs state: "Appellants appreciate the trial court's candor in specifying the precise ground of its ruling, to enable appellants to test the constitutionality of Sections 13950 and 13951 of the Water Code of the State of California per se, and as applied under our facts."

[4] The plaintiffs' opening and closing briefs are replete with arguments of fact even though no trial has been held. In *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187], the court states: "We treat the demurrer as admitting all material facts properly pleaded, *but not contentions, deductions or conclusions of fact or law.* [Citation.] We also consider matters which may be judicially noticed. [Citation.] Accordingly, from time to time herein we shall refer to relevant information which has been drawn to our attention either by the parties or by our independent research; in each instance we judicially notice this material since it is contained in publications of state officers or agencies. [Citations.]" (Italics added.)

We therefore shall confine ourselves to those material facts properly plead and those matters which may be judicially noticed, without losing sight of the fact that the principal issue involved herein is the constitutionality of Water Code sections 13950 and 13951.

septic tanks in the Lake Tahoe watershed is a public nuisance, and that the occupancy of any building from which waste is thus discharged may be enjoined. Plaintiffs contend this statutory enactment to be arbitrary since it bears no logical or rational relationship to other code definitions of "nuisance."[5] They contend the Legislature has created a new and novel definition of public nuisance which is wholly unrelated to the preservation of the public health, safety and welfare. (See *Ex parte Whitwell* (1893) 98 Cal. 73, 78-80 [32 P. 870].)

Plaintiffs contend Water Code section 13951 is fatally overbroad since it makes no distinction between means of waste disposal which constitute a public nuisance and those which do not. In so doing, the statute makes no provision for compensation of property owners whose disposal systems do not, in fact, constitute a nuisance.

Plaintiffs contend the statute violates the supremacy clause of the United States Constitution (art. VI, cl. 2) since it is in conflict with the National Environmental Policy Act of 1969 ("NEPA") (42 U.S.C. § 4321 et seq.) in that it does not provide for any balancing or weighing of the benefit versus detriment involved in the construction of sewer systems in the Lake Tahoe Basin.

Plaintiffs also argue that section 13951 of the Water Code violates the separation of powers clause of the state Constitution (art. III, § 3), since the statute, on its face, demonstrates an attempt by the Legislature exclusively to vest certain judicial powers in the Lahontan Regional Quality Control Board. (Cf. *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 42-43 [112 Cal.Rptr. 805, 520 P.2d 29].)

---

[5]Water Code section 13050, subdivision (m) provides: "(m) 'Nuisance' means anything which: (1) is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, and (2) affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal, and (3) occurs during or as a result of the treatment or disposal of wastes."

Sections 3479 and 3480 of the Civil Code provide:

"Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life, or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance."

"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

The thrust of plaintiffs' argument is that the State lacks the power to compel plaintiffs, at their expense to connect to a sewage line rather than to continue to use their present systems. The plaintiffs' contentions are without merit. Before proceeding to the four specific arguments, however, we first note the applicable principles involved.

As early as 1913 the United States Supreme Court stated as follows: "It is the commonest exercise of the police power of a state or city to provide for a system of sewers, and to compel property owners to connect therewith. And this duty may be enforced by criminal penalties. [Citation.] It may be that an arbitrary exercise of the power could be restrained, but it would have to be palpably so to justify a court in interfering with so salutary a power and one so necessary to the public health. There is certainly nothing in the facts alleged in the bill to justify the conclusion that the city was induced by anything in the enactment of the ordinance other than the public good, or that such was not its effect." (*Hutchinson* v. *Valdosta* (1913) 227 U.S. 303, 308 [57 L.Ed. 520, 523, 33 S.Ct. 290].)

In *Sullivan* v. *City of Los Angeles* (1953) 116 Cal.App.2d 807, 810 [254 P.2d 590], the court states: "It is elementary that reasonable regulations governing . . . methods and devices for the conveyance of sewage from private dwellings in municipalities, are within the police power. [Citations.]

" '[E]xcept where the court can see, in the light of facts properly brought to its knowledge, that a given police regulation has no just relation to the object which it purports to carry out, and no reasonable tendency to preserve or protect the public safety, health, comfort, or morals, the decision of the legislative body as to the necessity or reasonableness of the regulation in question is conclusive.' [Citation.]" (See also *In re Nicholls* (1925) 74 Cal.App. 504, 507-508 [241 P. 399]; in general, see 7 McQuillin, Municipal Corporations (3d ed. 1968) § 24.264, p. 117.)

The plaintiffs have also confused the police power with eminent domain. In *Lees* v. *Bay Area Air etc. Control Dist.* (1965) 238 Cal.App.2d 850 [48 Cal.Rptr. 295], the court, faced with a regulation prohibiting the use of incinerators, made the distinction (at pp. 856-857):

"Appellants' contention confuses an exercise of the police power on the part of the District with an exercise of the power of eminent domain

by a public agency. Undoubtedly, as appellants contend, private property may not be taken for public use without just compensation being made to the owner. (Cal. Const., art. I, § 14.) But the constitutional guaranty of just compensation attached to an exercise of the power of eminent domain does not extend to the state's exercise of its police power, and damage resulting from a proper exercise of the police power is simply *damnum absque injuria.* (*Gray* v. *Reclamation District No. 1500,* 174 Cal. 622, 639 [163 P. 1024].) In the cited case our Supreme Court declared that: '[T]his much is uncontestably true: Where the police power is legitimately exercised, uncompensated submission is exacted of the property owner if his property be either damaged, taken, or destroyed.' (*Id.,* at 640.) Here, of course, the District, in the enactment and enforcement of its Regulation 2, was engaged purely in an exercise of the state's police power. The only question presented, therefore, is whether the District in enacting and enforcing its regulation exceeded the limits of a valid exercise of that power."

Thus, it is our task to ascertain whether the two code sections are arbitrary, unreasonable or discriminatory, i.e., whether there was a valid exercise of the police power. (See *Lees* v. *Bay Area etc. Control Dist., supra,* 238 Cal.App.2d at p. 857.) We now turn to plaintiffs' four specific arguments regarding the constitutionality (on its face) of Water Code section 13951.

■ Plaintiffs contend the Legislature could not declare their methods of sewage disposal a "nuisance" since the definition set forth in Water Code section 13951 does not conform to the definitions found elsewhere in the Water Code and in the Civil Code.

These other code sections, however, do not limit the Legislature so long as its exercise of the police power is not arbitrary or unjustly discriminatory. The police power is one of the most essential powers of government and one that is least limitable. Thus, even though something may not be a nuisance per se, it is still within the police power to declare it a nuisance for regulatory purposes. (*Hadacheck* v. *Sebastian* (1915) 239 U.S. 394 [60 L.Ed. 348, 356-357, 36 S.Ct. 143] [prohibition of brickmaking within a designated area]; *Miller* v. *Schoene* (1928) 276 U.S. 272 [72 L.Ed. 568, 571, 48 S.Ct. 246] [destruction of ornamental cedar trees to prevent infecting of apple orchards with cedar rust].)

In *City of Bakersfield* v. *Miller* (1966) 64 Cal.2d 93, 100 [48 Cal.Rptr. 889, 410 P.2d 393] (cert. den., 384 U.S. 988 [16 L.Ed.2d 1005, 86 S.Ct. 1890]), the court states:

"Where the Legislature has determined that a defined condition or activity is a nuisance, it would be a usurpation of the legislative power for a court to arbitrarily deny enforcement merely because in its independent judgment the danger caused by a violation was not significant. The function of the court in such circumstances is limited to determining whether a statutory violation in fact exists, and whether the statute is constitutionally valid."[6]

■ Plaintiffs next contend that Water Code section 13951 is fatally overbroad in that it makes "no distinction between cesspools, septic tanks, or other means of waste disposal which do constitute a public nuisance, and those which do not." They further contend the statute permits the imposition of a penalty upon guilty and innocent alike. They also argue that Lake Tahoe residents are being discriminated against since like restrictions do not apply to Clear Lake or the Sacramento River.

In essence, plaintiffs are making an equal protection argument, claiming that the classification of *all* property owners in the Lake Tahoe watershed is an arbitrary and invidious classification.

The legislative purpose of the act was described as follows: "This act, applicable only to the watershed of Lake Tahoe, is necessary to meet the unique problems of water quality control presented by the population growth and development of the area in relation to Lake Tahoe's geographic location and the necessity to export any waste produced in the area out of the Lake Tahoe Basin." (Stats. 1969, ch. 1356, p. 2743.)

In view of this avowed legislative purpose, the plaintiffs' argument is answered by the court's language in *Williamson* v. *Lee Optical Co.* (1955) 348 U.S. 483, 489 [99 L.Ed. 563, 573, 75 S.Ct. 461]:

"The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. [Citation.] Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. [Citation.] The legislature may select one phase of one field and apply a remedy there, neglecting the others.

---

[6]See also *CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306, 318-319 [118 Cal.Rptr. 315].

[Citation.] The prohibition of the Equal Protection Clause goes no further than the invidious discrimination."

And, in *Whittaker* v. *Superior Court* (1968) 68 Cal.2d 357, 368 [66 Cal.Rptr. 710, 438 P.2d 358], the court states: "Finally, it is to be observed that a classification based on legislative experience is presumed valid and will not be rejected unless plainly arbitrary. 'Statutory discrimination between classes which are in fact different must be presumed to be relevant to a permissible legislative purpose and will not be deemed to be a denial of equal protection if any state of facts could be conceived which would support it.' [Citations.]"

The Legislature has determined that there exists a clear and present danger in the Lake Tahoe Basin. Under the circumstances, we cannot say that the statute here in question constitutes an invidious discrimination. (See *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 502-503 [96 Cal.Rptr. 553, 487 P.2d 1193]; *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 16 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].)

■ Plaintiffs attack Water Code section 13951 as violating the letter and spirit of the national environmental policy as set forth in the NEPA and, therefore, is violative of the supremacy clause.

Plaintiffs' argument is rather difficult to follow. They first cite a portion of the NEPA which declares that all agencies of the federal government shall include in their recommendations for legislative and other major actions significantly affecting the environment a detailed environmental impact statement. (42 U.S.C. § 4332.) The State, of course, is not an agency of the federal government, nor is section 13951 a federal enactment.

They next cite section 4371 of the NEPA to the effect that there is a national policy for the environment which provides for the enhancement of environmental policy. Plaintiffs then quote the following:

"The primary responsibility for implementing this policy rests with State and local governments." (42 U.S.C. § 4371 (b) (2).)

This would appear to negate plaintiffs' argument that the State must follow an alleged federal policy of weighing benefit versus detriment in constructing a sewer system in the Lake Tahoe Basin.

828

The plaintiffs also complain that the statute fails to vest the Lahontan Board, or any other entity, with the power to make a comparative evaluation of the environmental effects of maintaining properly functioning cesspools, septic tanks, or other means of waste disposal against the environmental effects of constructing sewer lines. However, the Legislature, although it could have, was under no compulsion to do so. In any event, the statute does provide that the Lahontan Board may grant waivers under described circumstances. (Wat. Code, § 13951.)

■ Plaintiffs argue that the statute violates the separation clause of the state Constitution. In making this argument, they challenge that portion of section 13951 which provides:

"This section shall not be applicable to a particular area of the Lake Tahoe watershed whenever the regional board for the Lahontan region finds that the continued operation of septic tanks, cesspools, or other means of waste disposal in such area will not, individually or collectively, directly or indirectly, affect the quality of the waters of Lake Tahoe and that the sewering of such area would have a damaging effect upon the environment."

Plaintiffs contend that this paragraph of the statute gives the board, a nonjudicial body, "the essence of judicial power" and is therefore unconstitutional.[7]

The State admits that the board, under the statute, quite likely exercises quasi-judicial powers. However, it maintains that in California there are numerous boards and commissions exercising quasi-judicial powers. The reason for vesting such powers is set forth in *Gaylord* v. *City of Pasadena* (1917) 175 Cal. 433, 436-437 [166 P. 348]:

"Even a casual observer of governmental growth and development must have observed the ever-increasing multiplicity and complexity of administrative affairs—national, state, and municipal—and even the occasional reader of the law must have perceived that from necessity, if for no better grounded reason, it has become increasingly imperative that many *quasi*-legislative and *quasi*-judicial functions, which in smaller communities and under more primitive conditions were performed directly by the legislative or judicial branches of the government, are intrusted to departments, boards, commissions, and agents. No sound

---

[7]It is ironic that plaintiffs now challenge this power when they just previously complained of a *lack* of discretion.

objection can longer be successfully advanced to this growing method of transacting public business. These things must be done in this way or they cannot be done at all, and their doing, in a very real sense, makes for the safety of the republic, and is thus sanctioned by the highest law. For, as the supreme court of the United States declares: 'Indeed, it is not too much to say that a denial to Congress of the right, under the Constitution, to delegate the power to determine some fact or the state of things upon which the enforcement of its enactment depends, would be "to stop the wheels of government" and bring about confusion, if not paralysis, in the conduct of the public business.' (*Union Bridge Co.* v. *United States,* 204 U.S. 364 [51 L.Ed. 523, 27 Sup. Ct. Rep. 367].)"

Although the term "quasi-judicial" may be in some disrepute (see *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d at p. 42, fn. 14), the rationale of *Gaylord, supra,* still appears to be good law.[8] We therefore find this contention to be without merit.

■ Plaintiffs further contend that Water Code section 13951 is unconstitutional as applied to them. They put forth several arguments to support the proposition they were denied due process because the State filed a cross-complaint asking that the provisions of Water Code section 13951 be enforced (i.e., that plaintiffs be restrained from occupying any building on their property in the Fallen Leaf Lake area unless and until they had their buildings connected to a sewer system or a holding tank).

Plaintiffs argue that the State is "attempting to force [them] to abandon their legal appeal, or to proceed only upon the peril of losing all use, benefit and enjoyment of their properties . . . ." However, even should plaintiffs abandon their appeal, this would have no legal effect on the State's cross-complaint.

Plaintiffs cite *Morton* v. *Superior Court* (1954) 124 Cal.App.2d 577 [269 P.2d 81, 47 A.L.R.2d 478], for the apparent proposition that the State's cross-complaint is improper and cannot even be brought until plaintiffs' causes of action have been determined.

*Morton* involved injunctions which absolutely prohibited the operation of a quarry. For reasons not pertinent here, the court reversed the orders granting the injunctions. The court carefully pointed out, however, that the operation of a quarry, if it constituted a nuisance,

---

[8] *Strumsky* does not aid plaintiffs' cause since that case was concerned with *judicial review* of the decisions of certain local agencies.

could be absolutely prohibited. (*Id.* at pp. 581-582, 587.) In any event, *Morton* appears to have no precedential value with regard to the State's cross-complaint which was brought for the enforcement of the statute.

Plaintiffs rely on *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13] (and other prejudgment attachment and garnishment cases) for the proposition that the State's cross-complaint "would deprive appellants of their fundamental, vested property rights, without a prior judicial determination of the propriety thereof."

This argument is difficult to follow. First of all, the parties are presently before us for a judicial determination. Secondly, plaintiffs appear to have lost sight of the nature of this appeal. The State's cross-complaint is not in issue, as such, at the present time. We here consider only the sustaining of the State's demurrer to plaintiffs' cross-complaint based on the trial court's finding of the constitutionality of section 13951.[9]

Plaintiffs also contend that Water Code section 13951 is unconstitutional since the State's cross-complaint is directed only to those persons involved in this action and not against other property owners who are not in compliance with the statute. Hence, they claim discriminatory application of the statute. (See *Yick Wo* v. *Hopkins* (1886) 118 U.S. 356 [30 L.Ed. 220, 227, 6 S.Ct. 1064].)

However, the State is not required to file against all violators simultaneously. (See *Williamson* v. *Lee Optical Co., supra,* 348 U.S. at p. 489 [99 L.Ed. at p. 573]; *Buck* v. *Bell* (1927) 274 U.S. 200 [71 L.Ed. 1000, 1002, 47 S.Ct. 584]; *Lindsley* v. *Natural Carbonic Gas Co.* (1911) 220 U.S. 61 [55 L.Ed. 369, 377-378, 31 S.Ct. 337].)

Plaintiffs argue that the statute is arbitrary as applied since in the State's cross-complaint there is no allegation that plaintiffs' existing waste disposal systems constitute a nuisance in fact. However, section 13950 of the Water Code expressly declares them to be a public nuisance, and thus no allegation was required. Furthermore, legislative findings and declaration of policy are entitled to great weight. (*People* ex rel. *Younger* v. *County of El Dorado, supra,* 5 Cal.3d at p. 493.)

---

[9]We have previously discussed why we have agreed to hear only this aspect of the case instead of applying the one judgment rule. (See fn. 1.)

Also, we can hardly presume, that after this litigation is resolved, the trial court will not afford plaintiffs their "day in court" prior to granting any relief sought in the State's cross-complaint.

Plaintiffs' contention that the trial court's ruling deprived them of the opportunity to establish the invalidity of Water Code sections 13950 and 13951 appears to be an argument that there should have been an evidentiary presentation. However, this was a ruling on a demurrer to the plaintiffs' self-styled cross-complaint, and therefore there was no impropriety on the court's part.

■ Plaintiffs contend the trial court did not assume to be true their pleading which "expressly states that Water Code section 13951 is unconstitutional and that respondent's actions pursuant to section 13951 were unlawful and invalid . . . ."

Solely for the purpose of testing the questions of law raised, all material, issuable facts properly pleaded in the complaint are admitted. Allegations in the form of conclusions of law, however, are not admitted. (3 Witkin Cal. Procedure (2d ed. 1971) Pleading, § 800, p. 2413.)

In their final contention, plaintiffs present a bewildering array of arguments as to why their "cross-complaint" states several viable theories of recovery against the State, i.e., inverse condemnation,[10] abuse of process, slander of title, and trespass.

These contentions have been, for the most part, treated above. We emphasize, however, that plaintiffs have apparently lost sight of the nature of this appeal. The appeal is from the granting of the State's demurrer to plaintiffs' cross-complaint. The appeal is narrowly confined to the constitutionality of sections 13950 and 13951 of the Water Code, as evidenced by the plaintiffs' notice of appeal. Plaintiffs sought this method of procedure. They now seek to enlarge this narrow issue. This we refuse to do. We hold that sections 13950 and 13951 of the Water Code are constitutional.

The judgment of dismissal is affirmed.

Puglia, P. J., and Evans, J., concurred.

A petition for a rehearing was denied April 21, 1975, and appellants' petition for a hearing by the Supreme Court was denied May 28, 1975.

---

[10]See *State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 252-255 [115 Cal.Rptr. 497, 524 P.2d 1281] [action for inverse condemnation premature].)