**STEPHAN AND SONS, INC., Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE ZONING BOARD OF EXAMINERS AND APPEALS, Appellee.**

**No. 7854.**

Supreme Court of Alaska.

July 13, 1984.

---

Brian J. Farney and Mary Louise Molenda, Lynch, Farney & Crosby, Anchorage, for appellant.

Margaret J. Rawitz, Asst. Municipal Atty., Allen E. Tesche, Attorney, Jerry Wertzbaugher, Municipal Atty., Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

This is an appeal from a superior court decision which upheld a ruling of the Municipality of Anchorage Zoning Board of Examiners and Appeals (the Board). The Board had limited operation of a gravel pit by Stephan & Sons, Inc. (Stephan), appellant, to two separately tracted subparcels totaling thirteen acres of a fifty-three acre parcel. Stephan appeals to this court on the sole issue of whether its authorized "nonconforming use" may be expanded over the entire parcel. We affirm.

## I.

In 1969, George and Dixie Winningham were the owners of approximately fifty-three acres of property in Chugiak, Alaska. The property consisted of Government Lots 17 and 20, Township 15 North, Range 1 West, Seward Meridian, and forty acres within the unsubdivided portion of Township 15 North, Range 1 West, Seward Meridian. · The Winninghams used a portion of this property in connection with a small gravel excavating business which consisted of doing "small jobs that had to do with water lines and sewer systems." Gravel obtained from the property was used for roads the Winninghams were constructing off the premises, and sales to others were minimal. Equipment used by the Winninghams at that time consisted solely of a "very old dozer, a front-end loader and a truck." Residents of the area described the extent of excavation as "so small it was almost unnoticeable" or "a very modest operation and not very noticeable."

The first areawide zoning ordinance of the former Greater Anchorage Area Borough became effective in April 1969. The ordinance zoned certain land within the Borough, including that of George and Dixie Winningham, as "U: unrestricted." Mineral resource extraction operations were permitted on property zoned "U" only by special exception approved by the planning and zoning commission, or, if such operations existed before the property was zoned, as a nonconforming use. In response to inquiries from the Winninghams, a zoning enforcement officer for the former Greater Anchorage Area Borough advised the Winninghams that they had "grandfather rights" to gravel extraction on their property.

On July 3, 1973, Michael Stephan, a trucker and gravel pit operator, purchased the Winninghams' property for the benefit of appellant Stephan. At the time he pur-

chased the property, Michael Stephan estimated that only two to five acres were used for gravel operations. Stephan extended the gravel pit operation beyond Lots 17 and 20 for the first time in 1974. Stephan also substantially increased the intensity of the operation of the gravel pit in about 1978. One resident described this increase as "alarming." Residents complained to Stephan and expressed concern over safety hazards created by gravel trucks navigating the steep hills of their neighborhood.

On August 9, 1977, the Anchorage Assembly enacted Anchorage Municipal Code (hereafter AMC) § 21.55.090, which required operators of nonconforming pits such as Stephan's to apply for and receive approval of amortization permits and development and restoration plans. Stephan was advised of the need to obtain approval of a restoration plan by letter dated January 12, 1978. Consistent with a staff recommendation that Stephan only had valid nonconforming rights to the thirteen acres within Government Lots 17 and 20, the Planning and Zoning Commission denied approval of Stephan's restoration plan for the entire fifty-three acre property and limited his operations to Lots 17 and 20. This action was appealed to the Zoning Board of Examiners and Appeals, which upheld the Commission's decision.

Stephan appealed the decision of the Board to the superior court. Following briefing and oral argument by counsel, Judge Douglas J. Serdahely issued a "Decision on Appeal" on March 3, 1983 upholding the Board's decision. Stephan appeals to this court arguing that the Board should have approved expansion of the gravel pit operation over the entire fifty-three acres.[1]

## II.

AMC § 21.55.010 [2] authorizes the continuation of a use of land which does not

---

**1.** Stephan also raised several constitutional issues in its points on appeal, however it abandoned these issues in its brief.

**2.** This ordinance provides in relevant part:

Within the zoning districts established by this title or amendments that may later be adopted, there may exist lots, structures, uses of land and structures, and characteristics of use which were lawful before the effective

comply with the applicable zoning law, if that use was lawfully established before the zoning law went into effect. However, this provision states that its purpose is not to encourage the perpetuation of nonconforming uses and "that nonconformities shall not be enlarged upon, expanded, nor extended...." *Id.* AMC § 21.55.030, which deals specifically with nonconforming uses of land, provides in pertinent part:

Where at the time of the original passage of applicable regulations, lawful use of land existed which would not be permitted by the regulations thereafter imposed by Chapters 21.35 through 21.50, and where such use involves no individual structure other than small or minor accessory buildings, the use may be continued so long as it remains otherwise lawful, provided:

A. *No such nonconforming use shall be enlarged or increased nor extended to occupy a greater area of land than was occupied at the effective*

*date of adoption or amendment of the relevant regulations.*

B. *No such nonconforming use shall be moved in whole or in part to any portion of the lot or parcel other than that occupied by such use at the effective date of adoption or amendment of the relevant regulations.*

(Emphasis added). Thus, the relevant ordinances clearly prohibit the expansion of nonconforming uses.[3]

 Despite such clear language, courts have allowed uses involving the extraction of minerals to extend beyond the area where excavation has been completed under the "diminishing asset" doctrine.[4] The rationale for the "diminishing asset" doctrine is that the very nature of an excavating business is the continuing use of the land, and that this use is what is endorsed by the nonconforming use concept.[5] Thus, the doctrine holds that "an owner of a nonconforming use may sometimes be found to have a vested right to use an entire tract even though only a portion of

---

date of the applicable regulations, but which would be prohibited, regulated, or restricted under the terms of Chapters 21.35 through 21.50 or future amendment. It is the intent of this chapter to permit these nonconformities to continue until they are removed, but not to encourage their perpetuation. It is further the intent of this chapter that nonconformities shall not be enlarged upon, expanded, nor extended or be used as grounds for adding other structures or uses prohibited elsewhere in the same district.

Nonconforming uses are declared by this chapter to be incompatible with permitted uses in the districts involved. A nonconforming use of land or structure, or a nonconforming use of structure and land in combination shall not be extended or enlarged after passage of this chapter by the addition of other uses of a nature which would be prohibited generally in the district involved.

3. Stephan contends that the relevant zoning law is Greater Anchorage Area Borough Code of Ordinances § 21–7, the zoning ordinance in effect in 1969. This point is irrelevant since both ordinances are substantially identical.

4. *See generally* 4 A. Rathkopf, The Law of Zoning and Planning § 51.07[4][a] (4th ed. 1983); 1A C. Antieau, Municipal Corporation Law § 7.95, at 7–139 (Epstein rev. ed. 1984); *see also McCaslin v. City of Monterey Park,* 163 Cal.

App.2d 339, 329 P.2d 522 (1958); *Hawkins v. Talbot,* 248 Minn. 549, 80 N.W.2d 863 (1957); *Moore v. Bridgewater Township,* 69 N.J.Super. 1, 173 A.2d 430 (1961); *Syracuse Aggregate Corp. v. Weise,* 51 N.Y.2d 278, 434 N.Y.S.2d 150, 414 N.E.2d 651 (1980); *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 228 A.2d 169 (1967); *Gibbons & Reed Co. v. North Salt Lake City,* 19 Utah 2d 329, 431 P.2d 559 (1967).

5. *See County of Du Page v. Elmhurst-Chicago Stone Co.,* 18 Ill.2d 479, 165 N.E.2d 310, 313 (1960):

In a quarrying business the land itself is a material or resource. It constitutes a diminishing asset and is consumed in the very process of use. Under such facts the ordinary concept of use, as applied in determining the existence of a nonconforming use, must yield to the realities of the business in question and the nature of its operations. We think that in cases of a diminishing asset the enterprise is 'using' all that land which contains the particular asset and which constitutes an integral part of the operation, notwithstanding the fact that a particular portion may not be under actual excavation. It is in the very nature of such business that reserve areas be maintained which are left vacant or devoted to incidental uses until they are needed. Obviously it cannot operate over an entire tract at once.

the tract was used when the restrictive ordinance was enacted." 6 R. Powell, The Law of Real Property ¶ 871[3][iii], at 79C–178 to –179 (Rohan rev. ed. 1979).[6] The determining factor is "whether the nature of the initial nonconforming use, in the light of the character and adaptability to such use of the entire parcel, manifestly implies that the entire property was appropriated to such use prior to adoption of the restrictive zoning ordinance." Id.[7] The mere intention or hope on the part of the landowner to extend the use over the entire tract is insufficient; the intent must be objectively manifested by the present operations. See Marra v. State, 61 A.D.2d 38, 401 N.Y.S.2d 349, 351 (1978).

█ We believe that the relevant AMC provisions should be interpreted to allow a gravel pit operator to "expand" its operations past areas actually excavated in 1969 when the predecessor to AMC § 21.55.010 and AMC § 21.55.030 went into effect. Section .010 provides for the continuation of "characteristics of use." Further, AMC § 21.55.090, by providing for the amortization of a mineral resource nonconforming use, clearly contemplates that those uses may continue to some degree.[8]

█ Turning to the facts of the present case, we find substantial evidence [9]

to support the Board's determination that Stephan's gravel pit operation should be limited to Lots 17 and 20. The character of the Winninghams' use of the gravel pit in 1969 in no way manifestly indicated an objective intent to appropriate the entire fifty-three acres. At the inception of the restrictive ordinance, the gravel pit operation was on a very small scale. According to Stephan, it covered only a small area that even four years later had only extended to two to five acres within Lots 17 and 20. Given these facts, we believe the Board would have been justified in restricting Stephan's nonconforming use to even less than the thirteen acres which it approved.

The decision below is AFFIRMED.

█

---

6. It appears that the Board considered Stephan's property to consist of three separate tracts—Lot 17, Lot 20, and the remaining 40 acres. Stephan argues the entire 53 acres should be considered as one tract. The diminishing asset doctrine normally will not countenance the extension of a use beyond the boundaries of the tract on which the use was initiated when the applicable zoning law went into effect. See 4 A. Rathkopf, The Law of Zoning and Planning § 51.07[4][a] (4th ed. 1983); see also Midland Park Coal & Lumber Co. v. Terhune, 56 A.2d 717 (N.J.1948); Syracuse Aggregate Corp. v. Weise, 51 N.Y.2d 278, 434 N.Y.S.2d 150, 414 N.E.2d 651, 655 (1980); Davis v. Miller, 163 Ohio St. 91, 126 N.E.2d 49, 51 (1955). Since we hold that Stephan may not extend its operation past Lots 17 and 20 in any event, we decline to address this issue. We do note that given the policy we have expressed that "nonconforming uses are to be restricted and terminated as quickly as possible," Kelly Supply Co. v. City of Anchorage, 516 P.2d 1206, 1210 (Alaska 1973), any extension of a nonconforming use to an adjoining tract would be disfavored.

7. Thus, the "diminishing asset" doctrine defines the scope of the nonconforming use at its inception to include areas actually excavated and areas where future excavation is manifestly implied by the actual operations at that time.

8. AMC § 21.55.090 provides in relevant part:
 Notwithstanding the provisions of Section 21.55.070, where exploitation of mineral resources exists as a nonconforming use and has been in continuous existence since April 21, 1969, or before, that use may continue . . . .
 (Emphasis added).

9. The standard of review for a zoning decision is the substantial evidence test. Kelly Supply Co. v. City of Anchorage, 516 P.2d 1206, 1210 (Alaska 1973). In Kelly, we defined substantial evidence as such relevant evidence on the record as a whole "as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Keiner v. City of Anchorage, 378 P.2d 406, 411 (Alaska 1963)).