[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I STATEMENT OF APPEAL
The plaintiffs, Robert G. Kovacs, Paul B. Kovacs, Roger P. Kovacs and Advance Stone, Inc., appeal from the decision of the defendant, the New Milford zoning commission (commission), denying their application for the renewal of a special permit to excavate on portions of a 347 acre property (property) located on Boardman Road in New Milford, Connecticut. The plaintiffs bring this appeal pursuant to General Statutes § 8-9.
 II BACKGROUND
This is one of five consolidated appeals arising out of the commission's denial of two applications to renew a permit to excavate portions of a 347 acre property on Boardman Road in New Milford. The Kovacses are the owners of the property and do business as a general partnership known as Quarry Stone Gravel. A portion of the property is leased to Advanced Stone, Inc., which operates a quarry on the property.
The record on appeal reveals the following facts. Between 1969 and 1971, the board of selectmen of the town regulated earth removal activities under a town ordinance. The property has always been in an industrial zone and parts of the property had been used for earth removal, quarrying and the processing of stone even before the town began regulating the activity in 1969. In December 1971, the town adopted zoning regulations pursuant to which the zoning commission assumed the function of reviewing and issuing excavation permits. The mining, quarrying and processing of gravel, sand, rock and other earth materials CT Page 16226 was a permitted use in the industrial zone until June 20, 1985, at which time the zoning regulations changed and the earth excavation operations on the property became an existing non-conforming use.
The Kovacses, who owned the property prior to 1969, took out permits to excavate 56 acres of the property in 14 permits of 4 acres each beginning in 1969. They have filed annual applications, first with the board of selectmen and then with the commission, renewing the 14 permits as either active or inactive permits every year since 1969. All of the annual permit renewal applications specifically recite that the area was covered by permit #15, "a portion of 347 acres to be excavated in the future."
On May 14, 2000, Robert Kovacs and Advanced Stone, Inc. applied for a renewal of permit #15 for 7 active permits and 7 inactive permits of 4 acres each for 56 acres of the subject property. Public hearings on the application were held on July 25, 2000 and September 12, 2000. The hearing was closed on September 26, 2000. On November 28, 2000, the commission denied the application. At that time, the commission instructed the Zoning Enforcement Officer (ZEO) to inspect the property and to issue a cease and desist order if mining operations were ongoing. On November 30, 2000, the ZEO issued a cease and desist order upon a finding that there were excavating, processing and removal of earth products occurring on the property without a permit. On December 14, 2000, the plaintiffs appealed both the denial of the permit and the issuance of the cease and desist order to this court. The ZEO subsequently issued a second cease and desist order on December 22, 2000, which the plaintiffs appealed on January 2, 2001.
In February 2001, while the first three appeals were pending, the plaintiffs applied again for a renewal of mining permit #15 for 7 active and 7 inactive permits for four acres each for 56 acres of the subject property. Public hearings on the second application were held on March 13, 2001, on April 10, 2001, on April 24, 2001, and on May 8, 2001. The hearing was closed on May 8, 2001. On July 2, 2001, the commission denied the application.
Presently before the court is the plaintiffs' appeal from the commission's July 2, 2001 denial of the second permit application. As grounds for the appeal, the plaintiffs allege that the commission acted illegally, arbitrarily and in abuse of its discretion in the following ways: "(a) it disregarded evidence before it which showed that the use of the subject property complied with section 140-050 of the [New Milford] zoning regulations; (b) it improperly refused to renew a permit for a nonconforming use of the land, and made a decision which improperly restricts or prevents the right to continue a nonconforming use, and CT Page 16227 which ignores the natural expansion doctrine which applies to nonconforming mining or quarrying activities which began before the enactment of zoning regulations; (c) the Commission has no jurisdiction to require a commercial excavation permit for a nonconforming use under the provisions of the zoning regulations for the commercial use conducted on the subject property, and even though the plaintiffs have applied for and renewed permits, the regulations do not require or provide for a permit for the activities on the property; (d) the zoning regulations improperly place a time limit on a zoning permit for excavation; (e) the decision is not supported by substantial evidence in the record; (f) the Commission improperly interpreted the zoning regulations; (g) the decision is based on the possibility of or anticipated future zoning violations, which is not a valid basis for denying a mining permit application; (h) it incorrectly found that the mined areas on the property exceeded the areas previously authorized for mining by the Commission and the designated permit areas for active and inactive permits in June 1985; (i) it denied the application for reasons which it did not assign for denial of any similar prior permits issued annually for over 30 years or for the denial of the application in November 2000; (j) it considered matters which were beyond the permit application submitted by the applicant, and even though the Commission received a letter from the applicant's attorney stating that the applications should only consider the use of the limited areas in the permit application for a one year period and not other issues in dispute between the Commission and the applicant, including the status of the nonconforming use and the right to expand that use to other areas of the property; (k) it considered sections of the zoning regulations on grading, restoration and benching which do not apply to areas of the land not near property lines or streets, and where there was clear evidence that the prior foreclosure action had been terminated so that existing and proposed excavation was not near any property line; (1) some of the Commission members prejudged and had predetermined to deny the application; (in) it improperly delegated preparation of the contents of a resolution of denial of the application to the Zoning Enforcement Officer and its attorney; (n) it illegally allowed the Zoning Enforcement Officer to participate in the deliberations and decision on the application and to draw up a resolution of denial, and submit evidence after the close of the public hearing, when the Zoning Enforcement Officer had previously issued cease and desist orders against the plaintiffs and their property, and had brought a zoning enforcement action involving the same uses of the same property which remains pending. . . . (o) the chairman of the Commission, George Doring, had a conflict of interest and should not have participated and voted on the application because of bias and predetermination, and improperly failed to disqualify himself on the application; (j) the Commission's special counsel extensively participated in the application CT Page 16228 process and the decision of the Commission as if he was a member of the Commission, and influenced the decision while he was also acting as counsel in the pending zoning enforcement action in the Superior Court, prepared the resolution of denial, and expanded and used the application to obtain information for the zoning enforcement action; and (q) the denial of the application precludes any effective use of the subject property and takes away a continuing nonconforming use which amounts to a confiscation of it, in violation of the Fifth Amendment of the United States Constitution and Article I, section 11 of the Connecticut Constitution." (Appeal, ¶ 21.)
 III JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of a zoning commission to the superior court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Bridgeport Bowl-O-Rama v. Zoning Board of Appeals, 195 Conn. 276, 283,487 A.2d 559 (1985).
 A AGGRIEVEMENT
"[P]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. . . . It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved." (Citations omitted; internal quotation marks omitted.) Harris v. ZoningCommission, 259 Conn. 402, 409, 788 A.2d 1239 (2002). "Aggrievement falls within two broad categories, classical and statutory." (Internal quotation marks omitted.) Cole v. Planning Zoning Commission,30 Conn. App. 511, 514, 620 A.2d 1324 (1993), aff'd on remand, 40 Conn. App. SO1, 671 A.2d 844
(1996). "`Aggrieved person' . . . includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8 (a)(1).
The plaintiffs, Robert Kovacs, Paul Kovacs and Roger Kovacs and their partnership, Quarry Stone Gravel, are the owners of the property involved in this appeal. As such, they are statutorily aggrieved by the commission's decision. The plaintiff, Advanced Stone, Inc., operates the quarry on the property and leases part of the property for which the CT Page 16229 permit was requested. As a lessee of the property it is also aggrieved under § 8-8 (a)(1). RR Pool Home, Inc. v. Zoning Board ofAppeals, 43 Conn. App. 563, 568-70, 684 A.2d 1207 (1996).
 B Timeliness and Service of Process
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) [now subsection (f)] further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Notice of the commission's decision was published in the New Milford Times on July 12, 2001. (ROR, Item #24.) The present appeal was commenced on July 18, 2001, by service of process upon George Doring, chairman of the zoning commission of the town of New Milford and upon George Buckbee, town clerk of the town of New Milford. (Marshall's Return.) The court finds, accordingly, that the plaintiffs commenced this appeal in a timely fashion upon the proper parties.
 IV SCOPE OF REVIEW
"In reviewing an appeal from an administrative agency, the trial court must determine whether the agency has acted unreasonably, arbitrarily, illegally or in an abuse of its discretion." (Internal quotation marks omitted.) Smith v. Zoning Board of Appeals, 227 Conn. 71, 80, 629 A.2d 1089
(1993), cert. denied, 114 S.Ct. 1190 (1993). "The burden of proof is on the plaintiff to demonstrate that the commission acted improperly." Sperov. Board of Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991). "[W]here a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission." West Hartford Interfaith Coalition, Inc. v. Town Council,228 Conn. 498, 514, 636 A.2d 1342 (1994). "The reviewing court ought only . . . determine whether the assigned grounds are reasonably supported by the record and whether they are" Id., 514-15. Where an administrative agency gives reasons for the denial of a land use application, the denial must be upheld if even one of the reasons given is sufficient to support CT Page 16230 it. Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554,576, 538 A.2d 1039 (1988).
 V DISCUSSION A Whether the town's zoning regulations apply to the plaintiffs' commercial excavation operations
The commission stated several reasons for denying the plaintiffs' application, including the plaintiffs' failure to comply with various permit application requirements The plaintiffs argue, however, that they did not need an excavation permit because the zoning regulations that govern excavation activities do not apply to commercial excavation activities. The plaintiffs further assert that they filed permit applications in the past merely "in an attempt to work with the Town, but that they [were] not required to do so because they have a nonconforming use not expressly regulated under the regulations." (Plaintiffs' Brief, p. 15.)
The defendant counters that when the commercial excavation of earth products was made a nonconforming use in 1985, Plaintiffs held only one year permits. Once those permits expired, Section 140-060(7) expressly required, and continues to require, that Plaintiffs reapply for renewal. Moreover, the Zoning regulations continue to require that, as a condition of such renewal, Plaintiffs conduct their operations in accordance with the standards set forth in the Regulations. (Defendant's Brief, pp. 13-14.) The court agrees with the defendant.
The fact that the plaintiffs' right to excavate derives from General Statute § 8-2,[1] and not from local ordinance, does not preclude the town from regulating the activity. "Regulation of a nonconforming use does not, in itself, abrogate the property owner's right to his nonconforming use. . . . A town is not prevented from regulating the operation of a nonconforming use under its police powers. Uses which have been established as nonconforming uses are not exempt from all regulation merely by virtue of that status. It is only when an ordinance or regulatory act abrogates such a right in an unreasonable manner, or in a manner not related to the public interest, that it is invalid." (Internal quotation marks omitted.) Bauer v. Waste Management of Connecticut,Inc., 234 Conn. 221, 242, 662 A.2d 1179 (1995); see also Taylor v. ZoningBoard of Appeals, 65 Conn. App. 687, 698, 783 A.2d 526 (2001) ("The board CT Page 16231 asserts in its brief, and we agree, that the town has the right to regulate the plaintiffs' nonconforming use under its police powers.")
The plaintiffs do not contend that the earth excavation regulations in the present action are unreasonable or unrelated to the public interest. The plaintiffs argue, instead, that the regulations simply do not apply to their commercial excavation operations "[because] commercial excavation is not allowed in any zone [and] common sense indicates that the regulations are not designed to regulate uses which are not permitted in any zone." (Plaintiffs' Brief, pp. 14-15.)
"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court [must] decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." (Internal quotation marks omitted.) Quality Sand Gravel, Inc. v. Planning Zoning Commission, 55 Conn. App. 533,538, 738 A.2d 1157 (1999). "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [However], when a state agency's determination of a question of law has not previously been subject to judicial scrutiny, as in this case, the agency is not entitled to special deference." (Citations omitted; internal quotation marks omitted.) Taylor v. Zoning Board of Appeals, supra,65 Conn. App. 692-93.
Chapter 140 of the New Milford zoning regulations is entitled "Excavation of Earth Products." Section 140-010 of Chapter 140 states: "The purpose of these regulations is to regulate the conditions and operations of excavating, grading, filling and removal of earth, sand, stone, gravel, soil, minerals, loam, clay, peat moss and any other earth products. This section further is intended to conserve and preserve water storage areas, assure that erosion and sedimentation is minimized, that water pollution is prevented, that hazards inherent to open pits and steep slopes of loose earth are prevented, that nuisances . . . are minimized, that visual blight is controlled, and that the productive usage of land is maintained. . . ." Section 140-040, entitled "Excavation Permit Application Requirements," provides that "[a]n application for a permit to excavate and remove any of said products shall be made to the Commission by the property owner . . ." Section 140-050(1) provides that "[i]n considering any such application, the Commission shall consider the effect upon the premises and adjacent property, upon property values, health, safety, public welfare and any effect upon the future of the CT Page 16232 premises involved. (2) The Commission may approve the plan only when it is satisfied that the following conditions will be complied with in the undertaking of such excavation." Section 140-050(2)(A) through (O) then lists the health, safety and public welfare requirements referred to in § 140-050(2).
As previously noted, the plaintiffs assert that they are exempt from the town's excavation permit requirements because of § 140-030(1),[2]
which prohibits the commercial excavation of land in every zone. The plaintiffs argue, essentially, that the court should interpret the town's prohibition against commercial excavation as evidence of the town's intent not to regulate the activity at all. The plaintiffs' argument, however, ignores the unqualified and unambiguous language of § 140-010, which states that "[t]he purpose of these regulations is to regulate the conditions and operations of excavating, grading, filling and removal of earth, sand, stone, gravel, soil, minerals, loam, clay, peat moss and any other earth products." It is well established that "[w]hen interpreting a statute, courts should accord a statutory enactment its plain meaning. . . . We may not, by construction, read a provision into legislation that is not clearly stated therein." (Internal quotation marks omitted.)Hyllen-Davey v. Plan Zoning Commission, 57 Conn. App. 589, 595, 749A.2d 682 (2000). Moreover, "[w]e do not read statutory provisions to further bizarre or absurd results." Harris v. Zoning Commission,259 Conn. 402, 436, 788 A.2d 1239 (2002). Statutes must be construed using common sense and assuming a reasonable and rational result was intended. Modern Cigarette, Inc. v. Orange, 256 Conn. 105, 120-21,774 A.2d 969 (2001). In the court's view, to hold that the health and safety regulations at issue in the present action apply only to the small-scale excavation activities permitted under the regulations, but not to preexisting nonconforming commercial-scale excavation, would produce unreasonable and unintended results. Accordingly, the court finds that the New Milford zoning regulations apply to the plaintiffs' commercial excavation operations on the property.
 B Whether There is Substantial Evidence in the Record to Support the Commission's Finding That the Application Failed to Comply with Conditions Set Forth in the Regulations
In denying the plaintiffs' application, the commission found that "the excavation activity continues to violate the requirements of Section 140-050(2)(D) of the Regulations. The applicant has continued to maintain vertical cuts on the excavation face in excess of the maximum permitted CT Page 16233 depth of 30 feet without the required 20 foot bench. (See Exhibit 32.) This was a basis for denial in 2000. Given continued noncompliance with the Regulations, the Commission is not satisfied that the applicant will comply with the conditions of Section 140-050(2)(D)." (ROR, Item #16. P. 6.) The plaintiffs do not dispute the commission's factual findings with regard to the depth of existing cuts and the failure to bench between cuts.[3] Nor do the plaintiffs dispute that an application for a zoning permit must meet the conditions set forth in the regulations. (Plaintiffs' Reply Brief, p. 14.) The plaintiffs argue, instead, that § 140-050(2)(D) only applies where the excavation in issue is within 50' of a property line as set out in Section 140-050(2)(C). (Plaintiffs' Brief dated September 10, 2001, p. 18.)
As previously noted, "it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court [must] decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." (Internal quotation marks omitted.) Quality Sand Gravel, Inc. v. Planning ZoningCommission, supra, 55 Conn. App. 538.
Section 140-050(2)(D) provides: "When the depth of the excavation exceeds twenty (20) feet, the distance from the property line or highway line shall be increased not less than one (1) foot for each additional vertical foot of excavation. The maximum depth of the cut shall not be greater than a vertical distance of thirty (30) feet. Should excavation exceeding a vertical distance of thirty (30) feet be desired, a second cut shall be made beginning no closer than twenty (20) feet from where the first cut ends. These distances shall apply to all succeeding cuts."
The court agrees with the commission's interpretation of § 140-050(2)(D) that the thirty foot depth limitation and twenty foot benching requirement applies to any excavation. Indeed, in the court's view, the language is plain and unambiguous. Section 140-050(2)(D) is part of § 140-050, entitled "Regulations Concerning Conduct of Operations." Section 140-050(2) states that "[t]he Commission may approve the plan only when it is satisfied that the following conditions will be complied with in the undertaking of such excavation." Subsection (2)(D) is one of the conditions referred to in subsection (2). Read together with subsection (2), as it must be, subsection (2)(D) sets forth the requirements pertaining to the depth of excavations. First, it provides that "[w]hen the depth of the excavation exceeds twenty (20) feet, the distance from the property line or highway line shall be increased not CT Page 16234 less than one (1) foot for each additional vertical foot of excavation."[4] It then provides, however, that "[t]he maximum depth of the cut shall not be greater than a vertical distance of thirty (30) feet. Should excavation exceeding a vertical distance of thirty (30) feet be desired, a second cut shall be made beginning no closer than twenty (20) feet from where the first cut ends." Subsection (2)(D) concludes by stating that the depth and bench distances specified in this subsection "apply to all succeeding cuts," that is, excavations anywhere on the property.
Assuming, arguendo, that 140-050(2)(D) was susceptible to more than one interpretation with regard to whether the depth and benching requirements apply to any excavation, the rules of statutory construction require the court to look to the purpose the regulation serves in order to discern the drafters' intent. "A statute should not be interpreted in any way to thwart its purpose . . . and . . . [i]n construing a statute, common sense must be used and courts will assume that [the legislature intended to accomplish] a reasonable and rational result. . . ." (Citations omitted internal quotation marks omitted.) Caltabiano v. Planning Zoning Commission, supra, 211 Conn. 666-67.
Section 140-010 of the New Milford zoning regulations provides in part that "[t]he purpose of these regulations is to regulate the conditions and operations of excavating, grading, filling and removal of earth [products.] This section further is intended to . . . assure . . . that erosion and sedimentation is minimized . . . [and] that hazards inherent to open pits and steep slopes of loose earth are prevented. . . ." In the court's view, to hold that the depth of cut limitations and benching requirement do not apply to interior excavations would not only result in, but would implicitly permit, the very dangerous conditions that the regulations expressly seek to prevent. Accordingly, the court finds that § 140-050(2)(D) applies to the plaintiffs excavation operations.
 C Whether there was Substantial Evidence to Support the Commission's Finding that the Application Proposed Excavating Beyond the 1985 Permit Lines
As grounds for denying the plaintiffs' application, the commission also found that "the application for excavation permit associated with permit parcels 5-14 proposes both an expansion and a relocation of a pre-existing nonconforming use of land which violates the provisions of Section 160-020(1)(A)[5] and Section 160-020(1)(B)[6] of the Zoning Regulations." (ROR, Item #16, p. 3.) Specifically, the commission found CT Page 16235 "that with respect to the application associated with permit parcels 5-14, the applicant proposes to increase the size of the nonconforming earth excavation from forty (40) acres to sixty-three (63) acres. . . . into an area not previously permitted." (Id.) In reaching its decision, the commission relied on the April 4, 2001 report of Donald Marsh, the commission's consulting engineer. Marsh's report compared Exhibit 42, a February 20, 2001 map of the applicants' property, Exhibit B, a February 26, 2001 topographical map of the applicants' proposed mining areas, Exhibit 30, a site plan map of the subject mining areas dated March 22, 1996 and Exhibit 29, a mylar map of the subject mining areas dated October 14, 1986.[7] (ROR, Item H 32, p. 1.) The commission asked Marsh: "Does the proposed area match the permit area identified on Applicant's maps since 1985, or does the proposed area represent an expansion of mining activity into an area not previously permitted?" (ROR, Item H 32, p. 1.) Marsh responded: "An overlay of the 1986 map shows the 40 Acre permit area with the 2001 map showing a movement of an acreage of 500+ feet northeast from the 1986 permit area into a no permit area." (Id.) Additionally, the commission inquired of Marsh: "Excluding the area for permit parcels 1-4, what is the total acreage of the mining activity associated with the permit area as identified on Applicant's maps since 1985 and the permit area proposed in the pending application? In other words, what is the total disturbed area which will result if the pending application is approved?" (Id.) Marsh responded: "40 Acres approved 1986. 40 Acres applied for but this area would mean an additional 23 Acres." (Id.)
The plaintiffs argue that the commission "misread the maps" and that there was no evidence in the record to support the commission's factual determination that the application proposed to mine beyond the active and inactive permit lines in existence at the time the property became a nonconforming use. (Plaintiffs' Brief, pp. 26-27.) Specifically, the plaintiffs assert that Marsh's calculations are fatally flawed because the active and inactive permit lines depicted on Exhibit 42 represent the 1972 permit lines and do not reflect the active and inactive permit lines in existence in 1985, when the plaintiffs' excavation operations became a nonconforming use. (Plaintiffs' Brief, pp. 24-28.) Exhibit 43, the plaintiffs argue, depicts the permit lines as they existed in 1985 and demonstrates that the 2001 application proposed to excavate within those lines.[8] An examination of Exhibit 42, however, does not support the plaintiffs' assertion that it depicts 1972 conditions only. While the 1972 permit lines appear to have been superimposed on Exhibit 42, the map clearly depicts additional and more recent permit lines to the north and northeast of the 1972 lines.
It is undisputed that Exhibits 30 and 43, the same map drawn to CT Page 16236 different scales, depict the 1985 lines. Exhibits 30 and 43 depict no other lines but the 1985 lines. The 1985 lines portrayed in Exhibits 30 and 43 also correspond to lines depicted on Exhibit 42, Exhibit B and Exhibit 35. On Exhibit 42, the northern boundary of the 1985 line is labeled "per request of Loretta Brickley 1996 line," with "(inactive area)" and "(active area)" marking the north and south sides, respectively.[9] Therefore, contrary to the plaintiffs' contention, Exhibit 42 does indeed depict the 1985 permit lines, despite the lack of a label indicating such. Furthermore, to the north of the northern boundary of the 1985 lines depicted on Exhibit 42 lies the northern boundary line, labeled "S 13'26'07" E" and "2027.69'," of another set of lines that form the shape of a rectangle, with a diamond shaped appendage in the southeast corner. This same appendaged rectangle appears on Exhibit B and Exhibit 35. On Exhibit 35, the appendaged rectangle is drawn in the color red. It is only reasonable for the commission to have inferred that the appendaged rectangle, which appears on several of the maps, depicts the 2001 application lines and to have concluded, based on a comparison of those lines with the 1985 lines, that the present application proposed excavation considerably beyond the 1985 permit lines.[10]
The court finds, accordingly, that there was substantial evidence in the record to support the commission's finding that the plaintiffs' application proposed mining beyond the 1985 permit lines.
 D Whether the Natural Expansion Doctrine Applies to the Plaintiffs' Operations
The plaintiffs also appeal on the ground that, even if the present application proposed excavation beyond the 1985 permit lines, the natural expansion doctrine applies to diminishing asset businesses such as mining and quarrying. (Plaintiffs' Brief, pp. 29-30.) The court agrees.
In Connecticut Resources Recovery Authority v. Planning ZoningCommission, 225 Conn. 731, 626 A.2d 705 (1993), the Connecticut Supreme Court recognized the expansion doctrine and noted that "under [the] doctrine, a valid nonconforming use can be expanded beyond the area of a tract that it occupied when zoning was adopted." Id., 745. The court further noted that "[t]he jurisdictions that have considered this doctrine either require that there be an objective manifestation of intent to appropriate the remainder of the parcel for the use at the time of nonconformity; see, e.g., Stephan Sons, Inc. v. Anchorage,685 P.2d 98, 102 (Alaska 1984); Town of Wolfeboro v. Smith, 131 N.H. 449, CT Page 16237 453, 556 A.2d 755 (1989); or have applied it to factual situations where intent to appropriate the entire parcel was not at issue. See, e.g.,McCaslin v. Monterey Park, 163 Cal.App.2d 339, 349-50, 329 P.2d 522
(1958); DuPage v. Elmhurst-Chicago Stone Co., 18 Ill.2d 479, 483-85,165 N.E.2d 310 (1960)." Id.
Although our Supreme Court has not yet had an occasion to apply the expansion doctrine to a diminishing asset operation, the cases from other jurisdictions cited by the court in Connecticut Resources RecoveryAuthority v. Planning Zoning Commission, supra, are instructive as to the doctrine's unique application to such operations. Indeed, the two cases cited by the Connecticut Supreme Court for the proposition that "intent to appropriate the entire parcel" for a nonconforming use is sometimes "not at issue" involved excavation operations. In DuPage v.Elmhurst-Chicago Stone Co., supra, 165 N.E.2d 310, the Illinois Supreme Court held that "[i]n a quarrying business the land itself is a material or resource. It constitutes a diminishing asset and is consumed in the very process of use. Under such facts the ordinary concept of use, as applied in determining the existence of a nonconforming use, must yield to the realities of the business in question and the nature of its operations. We think that in cases of a diminishing asset the enterprise is `using' all that land which contains the particular asset and which constitutes an integral part of the operation, notwithstanding the fact that a particular portion may not yet be under actual excavation. It is in the very nature of such business that reserve areas be maintained which are left vacant or devoted to incidental uses until they are needed. Obviously, it cannot operate over an entire tract at once." Similarly, in McCaslin v. Monterey Park, supra, 329 P.2d 522, the California District Court of Appeal rejected the defendants' argument that the plaintiffs were limited to excavating only those portions of the land that were already being excavated when the operation became a nonconforming use. Id., 527. That court stated: "The very nature and use of an extractive business contemplates the continuance of such use of the entire parcel of land as a whole, without limitation or restriction to he immediate area excavated at the time the ordinance was passed." Id.
In Stephan Sons, Inc. v. Anchorage, supra, 685 P.2d 98, which was cited by our Supreme Court for the proposition that other jurisdictions require "an objective manifestation of intent to appropriate the remainder of the parcel for the use at the time of nonconformity," the Alaska Supreme Court concurred with the McCaslin v. Monterey Park andDuPage v. Elmhurst-Chicago Stone Co. holdings that the intent to expand a diminishing asset operation can be inferred from the operation itself.Stephan Sons, Inc. v. Anchorage, supra, 685 P.2d 98. That court stated: "[T]he very nature of an excavating business is the continuing CT Page 16238 use of the land, and that this use is what is endorsed by the nonconforming use concept. Thus, the doctrine holds that an owner of a nonconforming use may sometimes be found to have a vested right to use an entire tract even though only a portion of the tract was used when the restrictive ordinance was enacted. The determining factor is whether the nature of the initial nonconforming use, in the light of the character and adaptability to such use of the entire parcel, manifestly implies that the entire property was appropriated to such use prior to adoption of the restrictive zoning ordinance." (Citation omitted; internal quotation marks omitted.) Id., 101-02.
Stephan Sons, Inc. v. Anchorage is distinguishable from McCaslinv. Monterey Park and DuPage v. Elmhurst-Chicago Stone Co., however, in that the local zoning board in that case found that the plaintiffs property consisted of three separate tracts and that excavating had occurred on only two of the tracts at the time such excavating became a nonconforming use. Stephan Sons, Inc. v. Anchorage, supra,685 P.2d 100. Accordingly, the board decided that the plaintiff could not expand its excavation operations beyond the first two tracts. Id. Pursuant to the diminishing asset doctrine, the Alaska Supreme Court affirmed the board's decision to allow excavation to expand on the two tracts where excavation predated the change in regulations. Id., 102. The court also, however, affirmed the board's decision to prohibit an expansion of the plaintiffs operations onto the third tract, stating that "the character of the [plaintiffs] use of the gravel pit in 1969 in no way manifestly indicated an objective intent to appropriate the [third parcel]."[11] Id. This last statement, which pertained only to the third tract of land where excavation had never occurred, has been incorrectly cited by several jurisdictions for the proposition that a manifestation of objective intent to expand is required to expand all nonconforming uses, including diminishing asset operations. For example, in Town ofWolfeboro v. Smith, supra, 556 A.2d 755, the New Hampshire Supreme Court observed: "The majority of courts which have examined the issue of what it means to continue an excavation as a nonconforming use have found the excavation to be continuing rather than expanding when the excavation was limited to that area which the owner had, prior to the restrictive ordinance, `appropriated,' or where he had `manifested an intention,' by overt actions, to excavate, even if he had not yet actually excavated that section of the land." Id., 758.
Thus Town of Wolfeboro v. Smith appears to stand for the proposition that an excavation operation may expand only where there has been a manifestation of intent, by overt actions, to expand the operation at the time of nonconformity, rather than for the proposition that future excavation is manifestly implied in the excavation operation itself. It CT Page 16239 is important to note, however, that the "majority of courts" cited by the New Hampshire Supreme Court as supporting its statement of the expansion doctrine do not, in fact, support the New Hampshire court's articulation of the doctrine at all.[12] Indeed, a careful reading of the relevant case law reveals that the "manifest intent by overt acts" requirement of the expansion doctrine applies to all nonconforming uses other than diminishing asset operations. Thus, for example, in Connecticut ResourcesRecovery Authority v. Planning Zoning Commission, supra,225 Conn. 731, our Supreme Court affirmed the zoning board's finding that the plaintiffs "had failed to demonstrate an intent to appropriate the entire tract for solid waste disposal" at the time such disposal became nonconforming. Id., 747. see also, e.g., Marra v. State,61 App.Div.2d 38, 401 N.Y.S.2d 349, 351 (1978) (junkyard).
In the present case, the commission does not dispute that the plaintiffs' property is a single parcel of land that has been used continuously for commercial excavation since 1969. Nor does the commission dispute that the plaintiffs' annual permit renewal applications, since 1969, specifically recited that the permitted area covered "a portion of 347 acres to be excavated in the future." (Defendant's Brief, p. 22.) The commission argues, however, that "[t]he mantra like annual repetition of Plaintiffs' future intent to mine the entire parcel has no bearing on whether the use of land outside of the permit areas has been irrevocably committed to mining activity." (Id.) The court disagrees and adopts the holding in McCaslin v. Monterey Park, supra, 329 P.2d 522, that "[t]he very nature of an extractive business contemplates the continuance of such use of the entire parcel of land as a whole, without limitation or restriction to the immediate area excavated at the time the ordinance was passed." Id., 527. The court notes, however, that the plaintiffs' right to excavate is subject to the town's authority to regulate excavation pursuant to its police powers, as discussed in part V A of this opinion.
 E Whether the Commission Violated the Plaintiffs' Right to Fundamental Fairness in the Underlying Proceedings
Finally, the plaintiffs argue that their appeal should be sustained on the grounds that some of the commission members "had predetermined to deny the application" and that the commission illegally and improperly allowed Kathleen Castagnetta, the zoning enforcement officer, and Jeffrey Sienkiewicz, the attorney for the commission, to actively and prejudicially participate in the decision making process. (Appeal, ¶ CT Page 16240 21.) The plaintiffs argue that the "situation is particularly egregious . . . because both Castagnetta and Sienkiewicz had a direct personal interest in the outcome of the application because they had a lawsuit against the plaintiffs in the zoning enforcement case." (Plaintiffs' Reply Brief, p. 7.) In short, the plaintiffs argue that, although the commission was entitled to assistance from its staff and consultants, Sienkiewicz's and Castagnetta's level of involvement after the close of the hearing, particularly in light of the pending enforcement action, rendered the proceedings fundamentally unfair. (Id.)
The commission counters that it was proper for its staff and counsel to assist it in analyzing and evaluating the record evidence. The commission further argues that the plaintiffs waived any claim of conflict against Sienkiewicz and Castagnetta by not raising such claim at the time of the hearings, since the plaintiffs were aware, at that time, of both the pending enforcement actions and of Sienkiewicz's and Castagnetta's involvement in the second application proceedings. (Defendant's Brief, p. 31-32.)
While hearings before administrative agencies are informal and are conducted without regard to the strict rules of evidence, the Connecticut Supreme Court has recognized a common-law right to due process and fundamental fairness in administrative hearings. See Grimes v.Conservation Commission, 243 Conn. 266, 273, 703 A.2d 101 (1997). "This common-law right[, however,] is not coextensive with constitutional due process." Id., 273 n. 11. "The only requirement [in administrative proceedings] is that the conduct of the hearing shall not violate the fundamentals of natural justice. Fundamentals of natural justice require that there must be due notice of the hearing, and at the hearing no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary. . . . Put differently, due process of law requires that the parties involved have an opportunity to know the facts on which the commission is asked to act, to cross-examine witnesses and to offer rebuttal evidence." (Citations omitted; internal quotation marks omitted.) Id., 273-74.
Concepts of fundamental fairness "prohibits the use of information by a municipal agency that has been supplied to it by a party to a contested hearing on an ex parte basis." Norooz v. Inland Wetlands Agency,26 Conn. App. 564, 569, 602 A.2d 613 (1992). This includes technical and professional assistance to which a municipal administrative agency is entitled. There are, however, exceptions to this general rule. Extra-record information has been allowed in cases where it was shown that it had no effect on the agency's decision. This is a factual question, and the analysis must turn on the nature and content of the CT Page 16241 extra-record information." Id. at 573. Citing their decision inBrookfield Plaza Limited Partnership v. Zoning Commission,21 Conn. App. 489, 495, 57 A.2d 825 (1990), the Court said that the "common thread" in the cases granting exceptions is that "it is unfair for either the applicants or the opponents to submit additional evidence to the [agency] without giving the other party an opportunity to respond to this additional evidence." (Emphasis in original.) Norooz, supra,26 Conn. App. at 573. "The proper inquiry for a reviewing court, when confronted with an administrative agency's reliance on nonrecord information provided by its technical or professional experts, is a determination of whether the challenged material includes or is based on any fact or evidence that was not previously presented at the public hearing in the matter." Id. at 573-74.
The plaintiffs in the present action do not allege that the commission failed to provide adequate notice of the hearings, or that they were not given an opportunity to introduce evidence at the public hearings, or to or cross-examine adverse witnesses. Nor do the plaintiffs allege that the commission received evidence after the close of the public hearing. The plaintiffs allege, instead, that Castignetta's participation after the close of the public hearing "was illegal" because of her zoning enforcement action against the plaintiffs arising out of the cease and desist orders. (Plaintiffs' Reply Brief, p. 7.) An examination of the record, however, does not support the plaintiffs charge that Castagnetta participated in the commission's deliberations. Indeed, there is no evidence in the record that Castagnetta attempted to influence the commission's decision on the plaintiffs' application nor even that she offered any commentary on the application. The minutes of the June 10, 2001 meeting of the commission indicate only that "Mr. Doring made a motion to instruct the Zoning Enforcement Officer to draw up a resolution of denial incorporating the Commission's comments from this evening's discussion. The Zoning Enforcement Officer shall consult with counsel regarding wording of this document. The motion was seconded by Mr. Greenspan and carried with a 4-1 vote." (ROR, Item #14, pp. 24-25.)
Moreover, the two Superior Court cases cited by the plaintiffs as support for their argument, Faith Tabernacle Church v. Zoning Board ofAppeals, Superior Court, judicial district of Hartford, Docket No. CV 94 0537604 (May 6, 1995, Holzberg, J.) and Gabriele v. Zoning Board ofAppeals, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV 960152270 (April 20, 1998, Skolnick, J.), are distinguishable from the present facts in that the zoning enforcement officers in those cases were found to have had a direct interest in the proceeding and to have participated in the agency's deliberations and decision. "Though not literally a party to the dispute, as the moving CT Page 16242 force behind the issuance of the cease and desist order and as its principal defender on appeal to the ZBA, the Zoning enforcement Officer under the circumstances of this case, takes on the appearance and role of a party. . . . Thus, while a ZEO . . . may serve the ZBA in a purely administrative capacity as staff to the Board, that role blurs when the ZEO's decision is the very matter that is challenged on appeal." FaithTabernacle Church v. Zoning Board of Appeals, supra, Superior Court, Docket No. CV 94 0537604. Similarly, in Gabriele v. Zoning Board ofAppeals, Superior Court, Docket No. CV 960152270, the zoning enforcement officer "was present at the closed meeting of the ZBA held after the public hearing and participated in the discussion and decision regarding his cease and desist order." Id.
The plaintiffs also argue that Sienkiewicz's involvement in the post-hearing proceedings was improper because he represented Castagnetta in the cease and desist order enforcement actions. As previously noted, however, the permit application underlying the present action was unrelated to the cease and desist orders. Moreover, "[a zoning] board, composed of laymen, is entitled to technical and professional assistance regarding matters beyond its expertise. . . . This entitlement is necessarily implied in the legislation creating the board and setting forth its duties. . . . In this case, the assistance rendered to the board by town counsel concerned the statutory construction of a zoning regulation. The board was no less entitled to such advice on a primarily legal question, a matter certainly within the technical expertise of an attorney, than it is entitled to factual and statistical information supplied by its personnel trained in such matters." (Citations omitted.)Spero v. Zoning Board of Appeals, 217 Conn. 435, 444, 586 A.2d 590
(1991). "Competent subordinates may sift and analyze evidence, recommend findings of fact and conclusions of law, and draft orders for an administrative agency as an integral part of the process." ConnecticutNatural Gas Corporation v. Puca, 183 Conn. 128, 138, 439 A.2d 282
(1981).
The court finds no evidence in the record, nor do the plaintiffs cite to any, to indicate that Sienkiewicz did anything other than assist the commission, in a neutral fashion, in analyzing the record evidence and in applying the proper legal standards to it. The fact that Sienkiewicz represented the zoning enforcement officer in a separate action against the plaintiffs does not itself disqualify him from future proceedings involving the plaintiffs.
Finally, the plaintiffs allege that commission chairman George Doring had a conflict of interest and should not have participated in the decision on the plaintiffs' application. The plaintiffs further allege CT Page 16243 that "prior conduct of Doring also showed predetermination of the application and a sufficient interest in it to amount to a person conflict of interest. Doring's prior conduct included accepting a map which was not an A-2 survey and which contained disclaimers, and using it to deny the [first] application." (Plaintiffs' Reply Brief, p. 9.)
"Neutrality and impartiality of members are essential to the fair and proper operation of a planning and zoning commission." Cioffoletti v.Planning Zoning Commission, 209 Conn. 544, 553-54, 552 A.2d 796
(1989). "The burden of proving predetermination [is] on the plaintiffs."Schwartz v. Hamden, 168 Conn. 8, 17, 357 A.2d 488 (1975). "There is a presumption . . . that administrative board members acting in an adjudicative capacity are not biased. To overcome the presumption, the plaintiff . . . must demonstrate actual bias, rather than mere potential bias, of the board members challenged, unless the circumstances indicate a high probability of such bias too high to be constitutionally tolerable." (Citations omitted; Internal quotation marks omitted.) OGIndustries, Inc. v. Planning Zoning Commission, 232 Conn. 419,429, 655 A.2d 1121 (1995). "The decisive question, therefore, [is] whether [the board members] actually had made up their minds prior to the public hearing. . . ." Cioffoletti v. Planning Zoning Commission, supra, 209 Conn. 555.
There is no evidence in the record, nor did the plaintiffs introduce any credible evidence at the July 6, 2002 hearing on their appeal, that Doring was biased or had predetermined the outcome of the plaintiffs' application. The mere fact that he had voted against the earlier permit application, or had requested that the zoning enforcement officer visit the plaintiffs' property to see if they were operating without a permit, is not sufficient to demonstrate actual bias in his handling of the second permit application. There is no evidence that Doring had actually made up his mind prior to the public hearing.
 VI CONCLUSION
For the foregoing reasons, the plaintiffs' appeal is dismissed.
 ___________________ CREMINS, J.